[Civ. No. 2658. Third Appellate District.—July 23, 1923.]

JOHN O. DERR, Petitioner, v. C. O. BUSICK, Judge, etc., Respondent.

[1] BILL OF EXCEPTIONS—SERVICE—TIME—SUNDAYS.—Where the tenth or last day within which a proposed bill of exceptions may be served falls on Sunday, service upon the following day satisfies the requirements of the statute.

[2] ID.—APPELLANT AS ACTOR—LACK OF DILIGENCE—REFUSAL TO SET-
TLE—DISCRETION—MANDAMUS.—In the matter of securing the
settlement of a bill of exceptions for use on appeal, the appellant
is the actor and the duty is upon him to follow up the proceed-
ings with diligence in order that there may be a speedy hearing
of the case upon its merits; and where he permits a period of
ten months to elapse after delivering his proposed bill of excep-
tions to the clerk without bringing the same to the attention of
the trial judge or causing the settlement of the bill to be set
down for hearing, and such delay is unexplained, it is not an
abuse of discretion to refuse to settle such bill, and a writ of
mandate will not issue compelling the trial court to do so.

[3] ID. — REFUSAL TO SETTLE — EVIDENCE — MANDAMUS. — In order
to justify the issuance by the appellate court of a writ of man-
date to compel the settlement by the trial judge of a bill of ex-
ceptions it must appear that it was clearly the duty of the trial
judge to settle the bill, and the appellate court cannot so de-
termine without knowing what evidence was submitted to him
upon the hearing.

[4] ID.—MANDAMUS—DELAY IN SEEKING WRIT.—Where an appellant
delays more than three months after the refusal of the trial
judge to settle his proposed bill of exceptions for use on appeal
before making application to the appellate court for a writ of
mandate to compel the settlement of such bill, and no excuse is
offered for the delay, the appellate court will look with disfavor
upon such lack of diligence.

APPLICATION for a Writ of Mandate to compel the
settlement of a bill of exceptions.   Writ denied.

The facts are stated in the opinion of the court.

F. W. Sawyer, A. H. Carpenter and B. M. Bainbridge for
Petitioner.

B. F. Driver for Respondent.

BURNETT, J.—An application was made to the supreme
court for a writ of mandate commanding respondent, as
judge of the superior court of Sacramento County, ''to
settle and certify the bill of exceptions in the said case of

2.  Private person's right to *mandamus* to enforce performance of
duty by court or magistrate, notes. 9 **Ann. Cas.** 1074; **Ann. Cas.**
1912A, 1118.

John O. Derr, plaintiff, *vs.* Charles F. Silva, defendant, tried in the Superior Court and now pending on appeal in this Court, or that said judge show cause before this Honorable Court on a day to be fixed therefor, why he has not settled and certified said bill of exceptions as by law provided.'' An alternative writ was issued by the supreme court and made returnable before this court, and upon the day set for hearing respondent appeared and filed a demurrer and an answer. The demurrer was overruled and evidence was received upon the issues made by the pleadings, and the matter has been submitted for decision. Many of the material allegations of the petition were denied by respondent either positively or upon information and belief. Upon some of the issues, it may be said, that the evidence submitted herein is conflicting and upon others the petitioner has failed to sustain his position. It will not be necessary to notice these in detail, but we may say that the allegations, which might imply that the judge acted arbitrarily, were not only not proven but were shown to be untrue. As an example, we may mention this averment: ''That the defendant Judge admitted at the time he refused to settle the bill as aforesaid, that the said proposed bill of exceptions had been on his desk in his chambers, from the time of its delivery to him by the clerk in March, 1922, until the time of such hearing, and that he had caused no notice of the settlement thereof to be given by the clerk until shortly before his said refusal to settle the bill as hereinbefore averred.'' To the contrary, the judge testified: ''I never knew there was a bill of exceptions until Mr. Gallup [a deputy county clerk] came up with a letter in his hand and said he had received a letter from somebody who wanted to have settled the bill of exceptions, and he asked me if I had it, so we looked and the bill of exceptions was lying on the desk. It was about a week before the date fixed for the settlement. At that time we fixed the date on which I would hear the application to settle the bill of exceptions.'' In reply to the question, ''Why was this matter not heard until that date?'' he replied: ''Because there was never any application so far as I know from any of the attorneys. That was the first I ever heard of it. I say that is as far as I know why. If there was ever any other reason, I never heard of it.'' We may add that there is no

evidence before us tending to discredit the foregoing statements.

The reasons assigned by respondent in his answer herein for declining to settle the said proposed bill of exceptions are as follows: "The proposed bill of exceptions had not been delivered to defendant as such Judge or to the Clerk of the Superior Court of the State of California, in and for the county of Sacramento, within the time allowed by law, and on the ground that the amendments of defendant Silva in said case were never delivered to the Clerk of said Court or to said Judge, and on the ground that proper notice of said hearing had not been given to defendant or his counsel in said case of *Derr* v. *Silva;* and on the further ground that plaintiff Derr in said case had been dilatory and negligent in not causing said proposed bill of exceptions to be presented to the Court for allowance; and on the ground that for a period of ten months after delivering said bill of exceptions to the Clerk plaintiff Derr in said case had neglected to call the attention of the court to said proposed bill of exceptions and had failed for said length of time to cause the settlement of said proposed bill of exceptions to be set down for hearing." [1] As to the first of these, respondent's position cannot be maintained. It is based upon the theory that the service of the proposed bill and amendments, as required by section 650 of the Code of Civil Procedure, if made at all, was one day too late. The tenth day, however, fell upon Sunday, a legal holiday, and the law is that in such cases service upon the following day satisfies the requirement of the statute. (Sec. 12, Code Civ. Proc.; *Frassi* v. *McDonald,* 122 Cal. 400 [55 Pac. 139, 772]; *Lancel* v. *Postlethwaite,* 172 Cal. 326 [156 Pac. 486].) It appears that the proposed bill of exceptions was received by the clerk through the mail for the judge on Monday, March 20, 1922, which, as stated, was within eleven days of the service of the proposed amendments and was therefore in time. Whether the proposed amendments were sent with the proposed bill according to the requirement of the statute and were received by the clerk is somewhat in doubt, but the question is not decisive and we shall consider it no further.

[2] It is apparent that appellant was dilatory and negligent in failing for such length of time to call the attention

of the trial judge to the bill and to request that a time be fixed for its settlement. It is true that he made some inquiry at the clerk's office, but he is uncertain as to the time, and he took no really definite step toward bringing the matter to a hearing until he sent to J. D. MacGaughey from Stockton to Sacramento to investigate the situation. He testified: "I went to the county clerk's office and stated my purpose in coming; that Mr. Derr told me he had sent up the bill of exceptions, and that, it had been here for some time and he had heard nothing from it and for me to get it and take it to Judge Busick who was the judge in the case. I went inside and a deputy clerk got me the filing docket and we looked it over very carefully and we could find no trace of any such paper having been received in the office, so I asked him to get me the files and we looked those over carefully. We spread them out on the desk but there was no such paper on file. I went to Judge Busick's chambers. He said Judge Busick may have them. I told him Mr. Derr said he had sent them a long time ago. So I went to Judge Busick's courtroom and I went to his chambers and they were closed and I spoke to a man coming out of one of the other departments—I think it was the bailiff—and he told me Judge Busick was away and would not be in court during the day. I think he said he was out of town. This was the 25th or 26th of November, 1922." It is to be observed that this was more than eight months after the proposed bill was sent to the clerk's office and nothing further in the premises seemed to have been done until the judge, finding it on his desk, as before stated, set the hearing for February 12, 1923, which was by consent changed to January 30, 1923. Moreover, the judge did not have in his possession and never saw the proposed amendments to the bill of exceptions and no evidence was offered before this court to show that any effort was made to supply him with it or a copy thereof. The duty of appellant to see that the proposed amendments were brought to the attention of the judge was as imperative as that relating to the proposed bill. If without negligence on the part of appellant the draft of these amendments had been lost and an effort was made to supply a copy, the situation might be different. But no such showing has been made here, and in view of the unexplained and unexcused failure of appellant to bring

such proposed amendments to the attention of the trial judge we could hardly be expected to command him to proceed with the settlement of the bill.

It is to be remembered, of course, that in these matters the appellant is the actor, that the duty is upon him to follow up the proceedings with diligence in order that there may be a speedy hearing of the case upon its merits.

In *Miller* v. *Queen Ins. Co.*, 2 Cal. App. 267 [83 Pac. 287] it is said: "The defendant was the moving party in the proceeding for a new trial, and the burden was at all times upon it to take whatever steps were necessary to enable the court to hear its motion. . . . Its contention that, after delivering the proposed bill and amendments to the clerk for the judge, it was not required to take any further steps toward procuring its settlement until it should receive notice that the judge had fixed a day therefor, is without support. It was its duty to ascertain when the judge should return to the city, and to obtain from him an order fixing a day for the settlement of the bill."

*In re Depeaux's Estate*, 118 Cal. 522 [50 Pac. 682], it is said: "By the rules of this court an appellant is allowed forty days within which to file the transcript on appeal after the appeal is perfected and the bill of exceptions, if there be one, is settled. A neglect upon the part of the appellant for the period of time to take such steps as are within his power and incumbent upon him to take for the purpose of securing the settlement of the bill is equivalent to his failure to file the transcript within the time limit." In *Dorcy* v. *Brodis*, 153 Cal. 673 [96 Pac. 278], it was held that a delay of four months in presenting a statement and amendments for settlement justified the trial court in dismissing the motion for a new trial on account of the inexcusable inactivity in reference to the settlement of the bill. Other decisions to the same effect need not be cited.

In matters of this kind the trial judge has a wide discretion, and it is only when that discretion clearly appears to have been abused that a higher court will intervene. After a delay of ten months in bringing the proceedings to an end, with no more persuasive palliative circumstance existing than herein disclosed, we would be entirely unwarranted in holding that the trial judge abused his privilege.

Moreover, the issuance of the writ of mandate is not altogether a matter of right, but it involves the consideration of its effect in promoting justice. If it should affirmatively appear that it would be an idle thing to issue it, that thereby no wrong could possibly be remedied or no right could possibly be enforced or promoted, the court would naturally refuse to issue the writ because it would answer no legitimate purpose in the scheme of the law. For instance, if the proposed bill had been submitted to the court and an inspection of it demonstrated beyond peradventure that it did not possess even the semblance of a bill of exceptions or utterly failed to exhibit any error on the part of the trial court, it would be our duty to decline to encourage any further trouble and expense in litigation that could not possibly result in advantage to appellant.

But the supreme court has gone further and imposed upon appellant the duty of presenting to the court to which the application is made the proposed bill in order that it may determine whether there is at least a disputable question of error. It was so held even in a murder case in *People* v. *Kahl*, 18 Cal. 433, wherein it was said by Chief Justice Field: "But in all such cases it must appear that there are reasonable grounds for the appeal taken and that it is not intended merely for delay. The papers presented to us on the present application do not contain a copy of the statement proposed, and we cannot without its inspection, determine whether any errors in the court below are alleged, which are entitled to any consideration whatever." (See, also, *People* v. *Dickson*, 46 Cal. 53, *Pacific Land Assn.* v. *Hunt*, 105 Cal. 202 [38 Pac. 635], and *Gay* v. *Torrance*, 145 Cal. 144 [78 Pac. 540].) In the last of these, authorities are cited to the effect that "a mere abstract right, unattended by any substantial benefit to the relator, will not be enforced by *mandamus*," and the court approved of this principle as applied in *People* v. *Kahl* and *People* v. *Dickson*. Herein we are entirely at a loss as to the contents of said proposed bill of exceptions, as it has not been brought to our attention at all.

[3] Again, in order to justify the issuance of the writ it must appear to the court that it was clearly the duty of the trial judge to settle the bill, but we cannot so determine without knowing what evidence was submitted to him at the

hearing. Petitioner did not offer any evidence of what showing was made before the judge further than to state: "Among the various things done was subpoenaing of the County Clerk to bring in his books. After having asked the County Clerk a number of questions in regard to these certain documents that were presumed to have been filed with him or sent to him and presumed to be filed my attorney then asked the Judge's permission to ask him a question, which he granted. He asked him how long he had the documents in his possession. Well, he didn't know; well, for some time; yes, for some time, some considerable length of time perhaps." Manifestly, such showing is utterly insufficient to justify the issuance of the writ.

[4] Again, more than three months elapsed after the refusal of the judge to settle the bill before this application was made. No excuse was offered herein for the delay, and the courts look with disfavor upon such lack of diligence. (*In re Depeaux's Estate*, 118 Cal. 522 [50 Pac. 682]; *McConoughey* v. *Torrence*, 124 Cal. 330 [57 Pac. 81].) If any reason existed why the action of the reviewing court was not invoked sooner, it should have been revealed herein.

For the foregoing reasons the peremptory writ is denied and the proceeding dismissed.

Hart, J., and Finch, P. J., concurred.