[Civ. No. 6153.   Third Appellate District.—December 2, 1938.]

CHARLOTTE S. MORRISON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Michael F. Shannon, Thomas A. Wood and Charles W. Wolfe for Petitioners.

Everett A. Corten, Keith & Creede and Edmund D. Leonard for Respondents.

THOMPSON, J.—By means of *certiorari*, the widow and minor children of Murdoch D. Morrison, a deceased miner,

seek to review the orders of the Industrial Accident Commission, denying compensation for his death as a result of silicosis incurred in the course of his employment in a quartz mine, and also denying a rehearing thereof. It was determined that the claim is barred by the provisions of section 11 (b) (1) of the Workmen's Compensation Act of 1917, as amended (2 Deering's Gen. Laws of California of 1931, p. 2272, Act 4749), which provided that all claims of the nature here involved must be commenced within six months of the date of the injury.

The petitioners claim that the deceased filed his claim for compensation, prior to his death, within six months of the time he became aware of the fact that he was afflicted with silicosis, a compensable occupational disease attributable to his employment in the mine, and that the payment of compensation as late as August 17, 1935, suspended the running of the statute of limitations, so that his claim, which was filed October 18, 1935, was not barred.

Murdoch D. Morrison was continuously employed as a miner in The Original Sixteen to One Mine at Alleghany, California, from 1928 until the summer of 1935. He died April 23, 1936, leaving surviving him, his widow, Charlotte S. Morrison, and three minor children, who are the petitioners in this proceeding.

Until the fall of 1934, Mr. Morrison was a strong, able-bodied man, with no apparent physical ailments. The mine in which he worked was permeated with mineral dust. Before February, 1935, he lost considerable weight; his voice was husky so that he could scarcely talk above a whisper, and he became very weak. He then consulted Doctor Padgett, the physician for the mine, who told him he had "a paralyzed vocal cord" and he gave him "a shot for tuberculosis". The doctor advised him to obtain an X-ray picture of his lungs. The picture was taken February 17th by Doctor Atkinson at Grass Valley. After Doctor Padgett examined the picture, he told Mr. Morrison there were spots on his lungs "like it is on mostly all miners", but that he need not be alarmed at that. The doctor then sent a specimen of his sputum to a laboratory at Berkeley for examination, which resulted in a report that it indicated a condition of tuberculosis. The sputum test was reported in a letter dated July 26, 1935. He was then advised to consult a

specialist. He left his work in the mine July 20, 1935. Doctor Hardie testified that Mr. Morrison was looking badly in 1932. He examined him several times, the last occasion being in August, 1934. He testified that Morrison had then lost considerable weight; that he was short of breath, with rales throughout the chest and lungs; that he had low blood pressure, subnormal temperature and decided hoarseness, not being able to speak above a whisper. He said that he later examined the X-ray picture which Doctor Padgett procured, and diagnosed the ailment as miner's consumption, or silicosis which he said was then in an advanced stage. He said his condition was caused from inhaling mineral dust, or silica in the course of his work in the mine. The doctor told him "he was developing the same (disease) as most miners get" and advised him to "get out from underground". He testified:

"I made it clear to him that it was due to his occupation, . . . I don't recall that I told him he had silicosis or tuberculosis or anything like that. It is rather a difficult thing to tell a person that sometimes. . . . Q. In other words without telling him the medical term for the disease or his disability, you did make clear to him the fact that he had a disability which was attributed to his employment? A. Yes, I did. . . . I advised him to take a vacation as long as he could and perhaps a change of environment. . . . Q. And you made that clear to him also, did you doctor? A. I did. Q. How long ago was this, doctor? A. August of 1934. . . . Q. . . . You didn't tell him he had silicosis? A. I don't recall I did, because I doubt if he would have understood the term. Q. . . . He was able to work? A. Well, he was in no condition to try to work, no. He was able to walk about. . . . I believe he did return after a month or so and worked for a while."

It appears that Mr. Morrison worked regularly in the mine until the month of August, 1934, during which time he was on leave with full pay for eleven days. He was also on leave with full pay for fifteen days in September, 1934. He then worked steadily until July, 1935, taking eleven days' vacation in that month on account of illness on full pay. The following month of August he also received $85 pay, but did not work in the mine. His claim for compensation for total disability on account of silicosis incurred in the

course of his employment in the mine was filed October 18, 1935. The hearing on that claim was commenced February 7, 1936. Mr. Morrison died on April 23, 1936, before the hearing was completed. His widow was duly appointed guardian of the minor children and her claim for compensation was filed May 22, 1936. The findings of the Commission were not filed until June 16, 1938. It was determined that the deceased person was employed in the mine from 1927 until August, 1934, and from October, 1934, to July, 1935, and that "The employee became disabled in August, 1934, from a condition which he was advised by a physician was the result of his occupation as a miner. His application was not filed until October 18, 1935, more than six months thereafter and the claim is barred, therefore, by the provisions of Chapter 2, Part 4, Division 4 of the Labor Code, formerly section 11 of Chapter 586 of the Laws of 1917. The claim of the application herein filed May 22, 1936, is likewise barred by the foregoing provisions."

We are of the opinion there is substantial evidence that Mr. Morrison died as a result of silicosis, an occupational disease which was incurred in the course of his employment as a miner in The Original Sixteen to One Mine, and that, as a reasonable person, he possessed knowledge or information that he had a compensable disability on that account in February, 1935. We are, therefore, bound by the findings of the Industrial Accident Commission in that regard.

When there is an entire lack of evidence to support the finding of the commission either granting or denying an award of compensation, the proceedings may be reviewed by the appellate court. (*Market St. Ry. Co.* v. *Industrial Acc. Com.*, 193 Cal. 178 [224 Pac. 95]; *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118, 122 [29 Pac. (2d) 852]; *Hubbert* v. *Industrial Acc. Com.*, 14 Cal. App. (2d) 171 [58 Pac. (2d) 171]; sec. 67, Workmen's Compensation Act of 1917 and amendments; secs. 5950–5953, Labor Code.) But findings of the commission on questions of fact may not be reviewed when there is substantial evidence to support the findings. (27 Cal. Jur. 578, sec. 218.) Even if reasonable inferences may be drawn from the evidence in support of the findings adopted by the commission, its award or denial of compensation may not be disturbed. (*Hartford Acc. &*

*Indemnity Co.* v. *Industrial Acc. Com.,* 202 Cal. 688, 693 [262 Pac. 309, 58 A. L. R. 1392].)

█ In the present case, in support of the findings to the effect that Mr. Morrison "became disabled . . . from a condition which . . . was the result of his occupation as a miner", and that he was so advised by his physician, is the testimony of the claimant himself. Doctor Padgett, the physician for the mine, told him so, and it is corroborated by the evidence of Doctor Hardie. It is true that Doctor Hardie did not confirm his belief that Mr. Morrison was afflicted with silicosis by his examination of the X-ray picture and the report of the analysis of the sputum until July, 1935. But it is true that Doctor Hardie told him long before that date that he had spots on his lungs; that he must get out of the mine, and that his ailment was due to his occupation. The claimant admitted that Doctor Padgett gave him "a shot for tuberculosis". From such evidence, in support of the findings, we must assume from the reasonable inferences to be drawn therefrom, that the claimant then knew he had a compensable disability directly traceable to his work in the mine, even though he did not know that particular miners' disease was commonly called silicosis.

It is true that the date of the injury, under the circumstances of this case, is deemed to be the time when the occupational disease culminated in a compensable disability incurred in the course of employment and traceable to the ailment as the primary cause therefor, or when, by the exercise of reasonable diligence, that information should have been acquired by the claimant. (*March* v. *Industrial Acc. Com.,* 217 Cal. 338 [18 Pac. (2d) 933, 86 A. L. R. 563]; *Price* v. *Industrial Acc. Com.,* 9 Cal. App. (2d) 213, 215 [49 Pac. (2d) 294]; *Argonaut Min. Co., Ltd.,* v. *Industrial Acc. Com.,* 21 Cal. App. (2d) 492, 499 [70 Pac. (2d) 216].) The question regarding the possession of that knowledge by the workman is one of fact, the determination of which will not be disturbed on review, provided it is supported by substantial evidence or by reasonable inferences necessarily drawn from the testimony adduced.

█ The petitioner, however, contends that the claim in this case is not barred because compensation was paid to Mr. Morrison as late as August 17, 1935, which is only two months

prior to the time when the original claim was filed in this proceeding.

We are convinced the record contains no substantial evidence to support the finding of the commission that the petitioners' claim is barred by the statute of limitations. On the contrary, the evidence is uncontradicted, that Mr. Morrison, while he was on sick leave in the month of July, 1935, was paid by The Original Sixteen to One Mining Company his full wages in the sum of $80, and that during the month of August, 1935, while he was on sick leave, he was paid his full wages to the 17th of that month, in the total sum of $85. Since the employer mining company had full knowledge of the fact that the claimant was afflicted with silicosis incurred in its mine in the course of his employment, from February, 1935, and that he was completely disabled from performing his service in July and August of that year, prior to the times these payments were made, the last-mentioned payments, under uniform authorities of California, are deemed to constitute the payment of compensation for his injury which has the effect of tolling the statute of limitations, and his claim is, therefore, not barred. (*Bulger* v. *Industrial Acc. Com.*, 218 Cal. 716, 725 [24 Pac. (2d) 796]; *London G. & A. Co.* v. *Industrial Acc. Com.*, 92 Cal. App. 298 [268 Pac. 670]; *Howell* v. *Lanfair*, 5 Ind. Acc. Com. 176; *Oders* v. *Great Western E. C. Co.*, 6 Ind. Acc. Com. 95; *Evans* v. *Los Angeles Ry. Corp.*, 216 Cal. 495 [14 Pac. (2d) 752]; *Evans* v. *Los Angeles Ry. Corp.*, 18 Ind. Acc. Com. 273; 27 Cal. Jur. 458, secs. 130, 131; Honnold on Workmen's Comp., p. 766, sec. 214; Bradbury's Workmen's Comp., p. 1199, sec. 6.) In the Bulger case, *supra*, the Supreme Court, approving the principle previously announced, said in that regard:

" 'Under the provisions of section 11 (c) of the Workmen's Compensation Act the payment of compensation shall have the effect of extending the period within which proceedings for its collection may be commenced, six months from the date of the last payment; and, as stated, the evidence here shows without dispute that while Read was totally disabled in the hospital his wages were being constantly paid by his employer. We are of the opinion that the payment of such wages, under the circumstances above related, constituted the payment of compensation for the injury; and that,

therefore, since Read's application was filed within six months after the last payment of such compensation, his claim was not barred by the statute of limitations.

" 'There appears to be no case adjudicated by the courts upon this particular point, but it has long been the rule of the Commission that where, as here, an employee is totally disabled and his employer continues to pay him full wages during the period of his disability, such payments do not constitute wages or gratuities, but are payments of compensation which operate to toll the statute during their continuance . . . and we find nothing unreasonable in the construction thus placed upon the terms of the act.' "

In response to the foregoing rule of construction of the statute of limitations prescribed by the Workmen's Compensation Act, the respondents quote from 1 Campbell's Workmen's Compensation, section 947, wherein a definition of the term "compensation" is given, and it is there said the question as to whether compensation has been paid depends upon the facts of the particular case from which the understanding of the respective parties in regard thereto is to be determined, in the light of the surrounding circumstances. The author of that text then says:

"Where the existence of disability is recognized, and the employee renders no service for the employer during such time, the payment of wages to the injured during part of the disability operates to toll the statute during that time. Mere payment of salary by the employer during the time that the employee was off from work does not constitute a payment of compensation within the meaning of the act sufficient to toll the statute, *where the employer did not know and the employee did not claim that such absence was due to injury.*"

The statute of limitations is a defense personal to the debtor, which will be waived if not pleaded. (16 Cal. Jur. 396, sec. 6.) The burden of proving that the claim for compensation was barred by the statute of limitations in the present case was upon the respondents who seek to defeat that claim on the ground that it was not presented within six months of the time of the injury complained of. (*Argonaut Min. Co., Ltd.,* v. *Industrial Acc. Com., supra.*) The record in this case is uncontradicted to the effect that Mr. Morrison worked for The Original Sixteen to One Mining Company for about eight years; that when he began working

in that mine he was a large, strong man with no apparent ailment; that he was six feet four inches tall, and weighed over two hundred pounds; that in August, 1934, Doctor Hardie, the physician for the mine, examined him and diagnosed his affliction as silicosis, advised him to get out of the mine, and gave him a shot for tuberculosis. In February, 1935, Doctor Padgett, another physician for the mine, examined the workman, and definitely knew he was a victim of silicosis. He found that Morrison had lost weight; that he was weak; his voice was husky and he was unable to speak above a whisper; he procured the taking of an X-ray picture and a scientific examination of his sputum, which corroborated his former conclusion that Morrison was suffering from silicosis; and he advised him to leave the mine. The claimant was on sick leave, under full pay twenty-nine days in September, 1934; he was on sick leave twenty-eight days, without pay, in October, 1934, and he was on sick leave, on full pay, twenty-eight days in July and August, 1935. During the last-mentioned period there can be no doubt the company knew he was physically disabled and unable to render service on account of silicosis. It must be assumed, in the absence of evidence to the contrary, that the knowledge of the regular physicians of the mine that he was a victim of silicosis for a period of six months, at least, immediately before he became totally disabled, was known to the owners of the mine. For two months of that period he was totally disabled. Under the foregoing authorities upon that subject, the payment of full wages to the disabled workman on sick leave will be construed to be compensation for his injury, and not mere wages of a man who was expected to return to his work. Nor was it a mere gratuitous contribution. Such payments result in tolling the statute of limitations. The claim of the workman is not barred under such circumstances.

It is argued that the enforcing of the above wholesome and just rule will result in employers refusing to pay wages to workmen who are temporarily ill, for fear that it would bind them to pay compensation in the event of future disabilities. We think not. We assume that employers will not seek for technical grounds to escape the payment of just compensation which they legally owe to one who has been disabled or injured in their employ. Compensation is an

obligation created by law in accordance with justice. The statute of limitations is a mere rule which limits the time within which a claim must be presented. It is adopted for the purpose of encouraging diligence and preventing injustice. It is a mere defense which may be waived, and should not become a trap to defeat just claims. The foregoing rule that the payment of compensation to a disabled workman under proper circumstances will toll the statute of limitations is fair and wholesome. It is characteristic of all human beings who are afflicted with incurable diseases, particularly with tuberculosis, to hope for recovery, and not to admit they are afflicted with an incurable disease so as to forfeit their jobs as a means of livelihood, until it becomes absolutely necessary to do so. The payment of wages to one who is afflicted with silicosis encourages him to believe he may continue in his employment. The payment of wages to one who is known to be fatally injured or afflicted is likely to lull him into false hopes and cause him to delay presenting his claim until the statute of limitations has barred it. The discontinuance of the payment of wages to a workman whom the employer knows to be afflicted with total disability may become a flag of warning to prevent the victim from waiving his right to compensation. At least this court may not hestitate to decide the present case in accordance with the established rule announced, merely because it may result in loss to others who are not involved in this litigation.

For the reason that the findings of the Commission, to the effect that the claim for compensation is barred by the statute of limitations, are not supported by substantial evidence, the orders are annulled, and the cause is remanded with directions to the Commission to hear and determine the claim on its merits.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1938, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1939.