[L. A. No. 19573. In Bank. May 14, 1946.]

EDWIN W. ALFORD, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION et al., Respondents.

Charles A. Son and David R. Rubin for Petitioner.

Everett A. Corten, R. C. McKellips, Edward A. Sarkisian, Claude F. Weingand and Herlihy & Herlihy for Respondents.

SPENCE, J.—Petitioner seeks the annulment of certain adverse awards made by the respondent commission upon his several applications for compensation. His original petition for a writ of review was.filed with the District Court of Appeal, Second District, Division Three, on July 9, 1945, and was thereafter denied without opinion. Petitioner then filed his petition for hearing in this court, which petition was granted and the writ was issued.

A preliminary question is raised by respondents concerning the jurisdiction of this court or of the District Court of Appeal to issue a writ of review because of the claimed failure of petitioner to file his petition for such writ within the time prescribed by law. The record shows that the commission's order denying a rehearing in this matter was made on June 8, 1945, and that thirty-one days thereafter—July 9, 1945—the petition for a writ of review was filed with the above-mentioned District Court of Appeal. Respondents maintain that the commission's awards are not now subject to judicial review because application therefor was not presented

to the appellate court "within thirty days after the petition for a rehearing [was] denied," as provided by section 5950 of the Labor Code. The point is not well taken under the circumstances here prevailing.

The thirtieth day after the commission's denial of a rehearing in this matter was Sunday, July 8, 1945. Generally speaking, when the last day for the performance of an act provided by law falls on a Sunday or a holiday, that day is excluded in the computation of time, and the act may be performed on the next succeeding day. (Civ. Code, §§ 10, 11; Code Civ. Proc., §§ 12, 13; Pol. Code, §§ 12, 13.) This general rule has been applied in the case of serving a notice of appeal (*Estate of Rose,* 63 Cal. 346), filing a statement of the grounds of appeal (*People* v. *Malone,* 213 Cal. 406 [2 P.2d 332]), filing an undertaking on appeal (*Robinson* v. *Templar Lodge,* 114 Cal. 41 [45 P. 998]), serving or presenting a bill of exceptions (*Derr* v. *Busick,* 63 Cal.App. 134 [218 P. 280]), filing points and authorities upon appeal (*Troy Laundry Machinery Co., Ltd.* v. *Drivers' Independent Laundry Co.,* 13 Cal.App. 115 [109 P. 36]), petitioning for relief under section 473 of the Code of Civil Procedure (*Bell* v. *Krauss,* 169 Cal. 387 [146 P. 874]), and commencing an action to foreclose a mechanic's lien. (*Mox, Inc.* v. *Leventhal,* 89 Cal.App. 253 [264 P. 562].) The outstanding exception to this general rule is found in the interpretation of the limitation regulating the time for the granting of a motion for a new trial under section 660 of the Code of Civil Procedure prior to its amendment in 1933, by which amendment the holiday extension in question was expressly allowed. (Stats. 1933, p. 305.) Accordingly, it was held in *Bidwell* v. *Sonoma County Transportation Co.* (1918), 39 Cal.App. 330 [178 P. 122], that even though the last day fell on a Sunday or a holiday, the time for performance was not extended since the code section specifically provided that if the trial court did not act within the stated period, the motion for a new trial was *ipso facto* denied. But considerations affecting the construction of a statutory limitation upon the power of the trial court to pass on a matter such as a motion for a new trial have no bearing upon the general rule governing the procedure to be followed by the parties to an action. (*People* v. *Malone* (1931), 213 Cal. 406, 409 [2 P.2d 332].)

The cases cited by respondents, as sustaining the general proposition that an appellate court's power to review an

award of the commission depends upon timely filing of an application therefor, do not pass upon the further question of what constitutes timely application when the thirtieth day falls on a Sunday or a holiday. Thus a writ of review was denied in *Neal* v. *Industrial Acc. Com.*, 36 Cal.App. 40 [171 P. 696], where the petition was filed three days late; and in *National Automobile Insurance Co.* v. *Industrial Acc. Com.*, 58 Cal.App.2d 508 [136 P.2d 815], where it only appears that the petition was filed "on the 31st day after the commission [upon rehearing] made its award." Upon the basis of the distinguishing circumstances here, in that the thirtieth day fell on a Sunday, and in accordance with the general rule governing the computation of time in such case, it follows that petitioner's application for a writ of review filed with the appellate court on Monday, July 9, 1945, was within the period prescribed by law (Lab. Code, § 5950) and that this proceeding is properly before this court for determination on the merits.

The following are the facts upon which petitioner's claims were based, as such facts appear from the allegations in his applications and from his testimony. Petitioner was employed as a plaster caster by respondent Fitch from October, 1942, through November, 1943. On January 4, 1943, while helping to load an airplane tank weighing about 200 pounds, petitioner sustained a wrenching of his right back in the sacroiliac region, for which injury he was paid temporary disability compensation to January 17, 1943. In June, 1943, while loading a B-29 tank, petitioner slipped, "threw his back out again" in the same sacroiliac area; and such injury, together with a "strep sore throat" and a cold, caused him to leave his work for about three weeks, during which period he was paid nonindustrial sickness benefits. In August, 1943, while unloading a freight car, petitioner "suffered recurrence of pain in the same place" in his back, as the result of which he was off work another three weeks, and he drew additional nonindustrial sickness benefits. Then on November 20, 1943, while wheeling a hand-truck loaded with about six to eight sacks of plaster, each sack weighing 100 pounds, petitioner sustained injury in the same sacroiliac region when the truck tipped and the top sacks fell on him. Despite alleged severe pain, petitioner "stuck out the rest of the shift doing light work" and, in fact, did not leave his work until November 29, 1943.

Applications for compensation covering these respective claims were filed with the commission. The first application was that filed February 23, 1943, alleging the back injury sustained January 4, 1943. With respect to this injury the commission on March 11, 1943, in pursuance of a release theretofore signed by petitioner, entered an order of dismissal which has never been set aside. The second application was that filed April 10, 1944, alleging petitioner's injury of November 20, 1943, "by heavy lifting and breathing plaster dust in cold, damp, unventilated plaster cast plant and factory," resulting in injury to the respiratory tract, "together with concurrent attacks of impetigo of face and feet, resulting in applicant being permanently unable to pursue his occupation as a plaster caster." Hearings were had on these two applications in June, August, and October, 1944; and in pursuance of facts adduced in evidence before the referee as to case history and medical treatment of petitioner during his period of employment at the plaster cast plant, three additional applications were filed on November 10, 1944, alleging as separate matters the back injuries sustained in June, August, and November, 1943, as above recited. This later-filed back injury application for November, 1943, rested on the same incident of November 20, 1943, that formed the basis for the earlier-filed application covering "injury to the respiratory tract" as of that date, the only difference in factual statement of the two applications being that the later-filed application added "injury to the back" to the recital of resulting injuries. At the consolidated hearing in February, 1945, the later-filed "back injury" application for November, 1943, was reported "lost" and it therefore was not made the subject of an award. It was discovered by petitioner's counsel "a few weeks ago" and was delivered to the commission. A photostatic copy of said application is attached to the record herein.

On April 25, 1945, the commission made findings on the four applications of record as follows: (1) *January 4, 1943,* back injury—"temporary total disability" caused from January 5 to January 17, 1943, for which compensation "has been fully paid"; (2) *November 20, 1943,* injury to respiratory tract—claimed "from breathing plaster dust and working in a cold, unventilated plant" while "employed as a plaster caster from October, 1942, to November 29, 1943"; "more than six months prior to the date of the filing of [application

therefor, April 10, 1944, petitioner] became disabled by virtue of said injury, and was aware that his disability was attributable to his employment. The claim . . . is therefore barred by limitations of time''; (3) *June, 1943,* injury, and (4) *August, 1943,* injury—each correlated with the respiratory tract and ''barred by the limitations of time'' for the same reason just quoted with respect to the denial of compensation for the injury of November 20, 1943. Upon issuance of awards on these four claims in accordance with the above findings, petitioner applied to the commission for a rehearing, which, as above stated, was denied.

Petitioner in this proceeding attacks the commission's findings on two grounds: (1) that the evidence does not sustain the decision that the claim for the respiratory injury was barred by the limitation of time under section 5405 of the Labor Code, requiring that ''proceedings for the collection of medical, disability or other benefits'' be commenced before the commission within ''six months from the date of injury''; and (2) that no adjudication was made of the back injuries occurring subsequently to the first injury on January 4, 1943 —the awards denying compensation for the June and August, 1943, injuries, each relating wholly to injury to the respiratory tract, and the claim for back injury on November 20, 1943, being ''lost'' and so not subject of an award. Petitioner's position cannot be sustained under the record here presented.

The law with respect to the running of the statute of limitations in cases of occupational disease has become well settled in this state. The leading case is *Marsh* v. *Industrial Acc. Com.,* 217 Cal. 338 [18 P.2d 933]. The occupational disease there involved was pulmonary silicosis and the injury claim, as here, was based on exposure to a dust-laden atmosphere. In that case, after an exhaustive review of the cases from other jurisdictions concerning the start of the prescriptive period under similar conditions, the court announced at page 351 the following rule: ''From our study of the subject we are brought to the conclusion that in the case of a latent and progressive disease . . . the date of the injury [should] be deemed the time when the accumulated effects culminate in a disability traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compen-

sable injury was sustained in performance of the duties of the employment.'' The rule of the Marsh case has been reaffirmed in *Price* v. *Industrial Acc. Com.*, 9 Cal.App.2d 213 [49 P.2d 294]; *Argonaut Mining Co., Ltd.* v. *Industrial Acc. Com.*, 21 Cal.App.2d 492 [70 P.2d 216]; *Morrison* v. *Industrial Acc. Com.*, 29 Cal.App.2d 528 [85 P.2d 186]; *Travelers Insurance Co.* v. *Industrial Acc. Com.*, 32 Cal.App.2d 643 [90 P.2d 327]; *Faith* v. *Erhart*, 52 Cal.App.2d 228 [126 P.2d 151]; and *Williams* v. *Industrial Acc. Com.*, 71 Cal. App. 2d 136 [161 P.2d 979].

The question regarding a claimant's possession of knowledge of the cause of his ailment, or as to whether the disease has progressed to an extent which constitutes compensable disability, is primarily one of fact to be determined by the commission. This court will not interfere with the commission's finding in that regard provided it is supported by substantial evidence or by reasonable inferences drawn from the testimony adduced. (*Morrison* v. *Industrial Acc. Com., supra,* 29 Cal.App.2d 528, 533.) So it is in the present case.

Here first to be considered is the testimony of petitioner himself with respect to his knowledge of the nature and extent of his respiratory ailment. He testified that in February, 1943, soon after he had returned to his work following his back injury in January of that year, he told Fitch, his employer, that ''they should have a hoist to lift . . . heavy objects, and also, *there should be a ventilator to carry off the excess dust.*'' He stated that the desired ventilating equipment was never installed while he worked at the plaster cast plant, that he continued to have ''colds almost every week,'' and that in June, 1943, he was forced to ''take off a month'' because of back trouble and a sinus condition, the latter having become ''very acute'' as the result of ''coughing up plaster.'' In view of such state of his health, petitioner testified that in ''the last part of June or July, 1943,'' he went to his employer's office seeking an ''availability certificate''; that he told his employer that the work was ''detrimental to [his] health'' and that he wanted ''a release from the plant,'' but that the release was refused him; that in the conversation he told his employer that ''I am still suffering with my back, and also, I just got over this serious cold and I am afraid if I work under the same conditions in the plant that it might be fatal''; that his employer nevertheless was unwilling to make any concessions in the work that would be expected of

him, and that within a few days he returned to his regular employment. Petitioner stated that he was absent again from the plant for three weeks in August, 1943, because of a cold, but that neither with respect to that occasion nor when he finally left his work on November 29, 1943, did he have any further conversation with his employer about his ailments. Generally in line with petitioner's recital of the character of his extended illness during the period in question is the testimony of petitioner's sister and that of one Cole. In particular, the latter testified that he had known petitioner for about eight years; that he visited petitioner after the January, 1943, injury when petitioner "was complaining of terrific pain in his back and that his throat was so inflamed that he couldn't speak, and that *he had to be coughing up green material all the time"*; and that he noticed the same condition of colds and back pains to prevail following petitioner's injuries of June and August, 1943. This undisputed evidence of petitioner's pronounced and continuing physical symptoms reaching an acute stage on occasion of his several absences from his employment prior to his final termination of work on November 29, 1943, is a material consideration justifying the determination of the commission that petitioner as a reasonable man was then aware, or in the exercise of ordinary care and diligence should have been aware, that he had a respiratory disability, that it was caused by his occupation as a plaster caster, and that it was seriously impairing the efficiency of his work.

While it does not appear in the record that prior to the permanent severance of his employment on November 29, 1943, petitioner was informed by a physician that his physical disabilities were caused by his work, yet beginning in January, 1943, petitioner was intermittently receiving medical treatment for the relief of his back, sore throat, successive colds, and sinus condition; and at least several months prior to his final termination of work, there is evidence that petitioner had correlated his impaired health with his occupation. Thus, in "the latter part of June or July, 1943," petitioner asked his employer for "a release from the plant" because the work was "detrimental to [his] health" and "it might be fatal" if he continued. From such conduct it could reasonably be inferred that petitioner in any event *then* knew that he had a compensable disability directly traceable to his

work in the dust-laden atmosphere of the plant, and that he was not depending on a medical diagnosis to give him knowledge of the injurious character of his employment on his physical well-being. This was nine to ten months prior to petitioner's filing of his first application based on a claim for respiratory injury—April, 1944. Under these circumstances the record amply sustains the commission's finding that "more than six months prior to the date of [said] filing" petitioner "was aware that his [respiratory] disability was attributable to his employment"; and that "his claim" therefor "was barred by limitations of time."

 Turning now to petitioner's second objection, that the commission made no adjudication as to his back injuries occurring subsequently to the first injury on January 4, 1943, that is not a matter open for review here. Conceding that the issue of compensable disability with relation to later back injuries was presented by petitioner through the filing of his successive applications, including the "lost" application which was discovered and delivered by petitioner's counsel to the commission only "a few weeks" prior to making petition for judicial review, petitioner does not dispute the fact that the failure to adjudicate this issue was not raised in the petition for rehearing before the commission. Such point of deficiency in the findings must therefore be deemed to have been waived. (Lab. Code, § 5904.) The rule is so stated in *Pacific Coast Casualty Co.* v. *Pillsbury*, 171 Cal. 52, 53-54 [151 P. 658]; *Great Western Power Co. of California* v. *Industrial Acc. Com.*, 196 Cal. 593, 599-600 [238 P. 662]; and *County of Los Angeles* v. *Industrial Acc. Com.*, 109 Cal.App. 724, 726-727 [293 P. 820].

The awards are, and each of them is, affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.