[S.F. No. 22673. In Bank. Aug. 5, 1970.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and HUGH JOSEPH QUINN, Respondents.

[S.F. No. 22674. In Bank. Aug. 5, 1970.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and JAMES B. PAGE, Respondents.

[S.F. No. 22675. In Bank. Aug. 5, 1970.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and WILLIAM G. PAUL, Respondents.

(Consolidated Cases.)

**COUNSEL**

Thomas M. O'Connor, City Attorney, and Donald J. Garibaldi, Deputy City Attorney, for Petitioner.

Everett A. Corten, Rupert A. Pedrin and George J. Engler for Respondents.

**OPINION**

**McCOMB, J.**—These three cases have been consolidated for review of awards of the Workmen's Compensation Appeals Board to determine a common question of law: Does the payment of an industrial disability retirement allowance more than one year from the date of injury and from the last furnishing of medical care, constitute the payment of "compensation" within the meaning of section 3207 of the Labor Code so as to toll the statute of limitations for filing proceedings to collect benefits under the Workmen's Compensation and Insurance Act (Lab. Code, § 3201 et seq.).

Claimants, a fireman and two police officers, sustained industrial injuries arising out of and in the course of their employment for the City and County of San Francisco. Each received a disability payment from the city pursuant to the city charter. In each case the payments were made by the city retirement board after an administrative hearing at which medical evidence was presented as to the extent of the injuries, the need for treatment, and the inability of the employee to continue his regular duties because of the work-related injury. Each was paid full salary during the period of temporary disability; each received medical treatment; each subsequently received a disability retirement allowance or pension based on these work-related injuries. The city charter establishes a comprehensive system for the payment of disability and retirement benefits, recognizes and provides for ascertainment of the city's liability to its employees under the Workmen's Compensation and Safety Act and for payment thereof from tax monies, and makes other compensation provisions for injured employees as well as retirement benefits for length of service. The basic question presented is the nature of the payments made by the city to these

claimants at or immediately prior to the time their claims were filed with the appeals board.

Hugh Joseph Quinn was born in 1894, entered city service in 1927, was injured twice in 1950, and has received a monthly disability retirement pension from the city since his retirement in August 1956.[1] He last received medical treatment in 1956. On April 27, 1967, he applied for the first time to the appeals board alleging a disagreement with the city regarding his claim for permanent disability and medical treatment. The city asserted the defense of limitations, and the referee found that the claim was barred. Reconsideration was granted, and Quinn urged before the appeals board that the city was estopped to raise the defense of the statute of limitations. The appeals board determined that "compensation" for the purpose of that statute was paid to him within one year from the filing of his claim and that the claim was not barred. It deferred decision on the issues of permanent disability, if any, caused by the injury and the city's claim of credit against any indemnity which might be awarded. It found that Quinn was in need of further medical care and treatment to cure or relieve him from the effects of his injuries and ordered the city to provide such care. It did not reach the estoppel issue.

William G. Paul was born in 1925; sustained injuries on February 8, 1954, and on July 30, 1962; and last received medical treatment for the 1954 injury in April 1960 and for the 1962 injury in March 1965. He was retired for disability on January 24, 1965,[2] and has received a retirement disability pension ever since. On December 7, 1967, he applied for the first time to the appeals board alleging a disagreement with the city regarding his claim for temporary and permanent disability indemnity, reimbursement for self-procured medical expenses, and medical treatment. The city had refused his request for further medical treatment, relying on the bar of the statute of limitations. The referee found that the claims were not barred, that Paul was in need of further medical treatment, that the city should provide such treatment and that it should reimburse him for self-procured medical care. The referee also found that the city was estopped

---

[1]Quinn retired under charter section 169(e), which provides that "Any pension payable because of the . . . retirement of any such persons shall be reduced in the manner fixed by the board of supervisors, by the amount of any benefits payable to or on account of such person, under the workmen's compensation insurance and safety law of the State of California."

[2]Paul retired under charter section 168.1.6, which provides that where an industrial disability retirement allowance is paid by the city and county, that portion of the allowance which is provided by contributions of the city and county "shall be considered as in lieu of any benefits, other than medical benefits payable" to the retired employee under the Labor Code "and shall be in satisfaction and discharge of the obligation of the city and county to pay such benefits."

from raising the defense of limitations. The appeals board granted reconsideration, struck the finding on estoppel, and otherwise affirmed and adopted the findings and decision.

James B. Page was born in 1930, was injured on July 5, 1958, and last received medical care for his injury in 1962. He retired on September 13, 1963,[3] to engage in less strenuous employment elsewhere. He applied on that date for disability retirement pension, which was granted on June 28, 1967, effective September 13, 1965. In November 1967 he received a lump-sum payment of $2,042.15 for the period September 13, 1965, through August 31, 1967. In December 1967 he filed a claim for the first time with the appeals board, alleging a disagreement with the city regarding his claim for permanent disability and medical treatment. In defending against his claim the city requested that a permanent disability rating of his 1958 injury be made, contending that the rating for his disability, if any, would appear to be minimal and certainly would not be such as to have required payments of disability indemnity as late as November 1967; and it urged the bar of the statute of limitations.

Article XX, section 21, of the state Constitution provides that all persons have a liability to compensate their workmen for injury or disability sustained in the course of their employment, irrespective of the fault of any party. Pursuant to the plenary power granted by the Constitution, the Legislature has enacted a comprehensive system of workmen's compensation in Division 4 of the Labor Code (§§ 3201-6002). "Compensation" is defined therein as meaning compensation under Division 4 and including every benefit or payment conferred by that division upon an injured employee without regard to negligence (§ 3207). "Employer" includes a city or county (§ 3300).

Neither the fact of injury nor the city's liability therefor under the state act is in dispute. Security for payment of compensation due under the state act may be satisfied by the employer becoming insured or by being permissibly self-insured (§ 3700). The city is permissibly self-insured. The act does not require that claimants must file with the state board. It does, however, provide specific periods of limitation within which such claims may be filed (§§ 5400-5412). Section 5404 provides that unless compensation is paid within the time limited for the institution of pro-

---

[3]Page retired under charter section 168.1.3, which provides that any member of the police department who becomes incapacitated for the performance of his duty by reason of bodily injury received in performance of his duty, shall be retired and if he is not qualified for service retirement shall receive a retirement allowance equal to 75 percent of the final compensation of said member.

Section 168.1.6 by its terms, applies to payments such as that encompassed in section 168.1.3.

ceedings for its collection, the right to institute such proceedings is barred. Section 5405 provides that the period within which proceedings may be commenced is one year from "(a) The date of injury; or (b) The expiration of any period covered by payment under Article 3 of Chapter 2 of Part 2 of this division [§§ 4650-4663, disability payments]; or (c) The date of last furnishing of any benefits provided for in Article 2 of Chapter 2 of Part 2 of this division [§§ 4600-4605, medical and hospital benefits]." Section 5409 provides that the running of the period of limitations so prescribed is an affirmative defense which may be waived.

Section 172 of the city charter provides that the benefit provisions of the workmen's compensation laws included in the Labor Code as they affect the benefits provided for, or payable to, or on account of, officers and employees, shall be administered exclusively by the retirement board, and that the latter shall determine whether the city, through the retirement system, shall assume the risks in whole or in part with the state compensation insurance fund. It also provides that "Whenever any member of the fire or police department . . . is incapacitated for the performance of his duties by reason of any bodily injury received in or illness caused by the performance of his duty, as determined by the retirement board, he shall become entitled, regardless of his period of service with the city, as fixed by the charter, while so disabled, for a period or periods not exceeding twelve months in the aggregate, with respect to any one injury or illness. Said disability benefit shall be reduced in the manner fixed by the board of supervisors by the amount of any benefits other than medical benefits payable to such person under the Labor Code concurrently with said disability benefit, and because of the injury or illness resulting in said disability. Such disability benefits as are paid in the absence of payment of any benefits other than medical benefits under the workmen's compensation laws included in said Labor Code, shall be considered as in lieu of such benefits, payable to such person under the said Code concurrently with said disability benefits, and shall be in satisfaction and discharge of the obligations of the city and county to pay such benefits under the Labor Code. Medical treatment which may become necessary to relieve or cure said members from the effects of the injury or illness shall be furnished by the city and county, in the same manner that such treatment is furnished under said Labor Code, but without first requiring continuing awards of such treatment by the . . . [appeals board] relating to impairments of permanent or of extended and uncertain duration.[4] The provisions of this paragraph shall be administered exclusively by the retirement board and the city and county shall pay to the retirement system during each fiscal year an amount equal to the total disability benefits paid by said

---

[4]Whether this sentence creates an estoppel is hereafter considered.

system during that year. . . ." ▇ By reference to the workmen's compensation laws in the Labor Code the charter impliedly refers to all of its provisions, including the limitations stated in section 5405 of that code.

▇ Compensation and pension systems, private or public, are to be encouraged for the benefit and protection of employees. If there is any conflict between the compensation provisions made by the employer and those made by the state law, the latter must prevail. (*Healy* v. *Industrial Acc. Com.,* 41 Cal.2d 118, 122 [258 P.2d 1].) ▇ It is the policy of the state law that compensation injuries be swiftly recognized and payments commenced and that medical care and hospitalization be speedily furnished and claims settled without litigation. (*Royal Indem. Co.* v. *Industrial Acc. Com.,* 239 Cal.App.2d 917 [49 Cal.Rptr. 224].) The charter here purports to provide for both the city's liability under the state act and other benefits.

▇▇ Payments of workmen's compensation and of retirement benefits are based upon entirely different principles. The former is compulsory under state law; the latter is voluntary and is subject to contractual arrangement between the employer and employee. The former must be entirely subsidized by city tax monies where the employer is a city (*City of Los Angeles* v. *Industrial Acc. Com. (Fraide)* 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d 801]) or by the employer himself, through insurance or otherwise, where the employer is not a public body. Retirement pensions are considered to be an element of contractual compensation earned by the employee (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 455 [326 P.2d 484]) and may include employee contributions.

Payment of workmen's compensation liability, as required by the state act, and payment of compensation benefits over and beyond the liability imposed by the state are also distinguishable. The source of each, in this instance, is tax monies; but the motive and obligation of the city is distinct. An employer may pay more than he is required to pay for disability compensation under the state act. Section 3750 of the Labor Code specifically provides that "Nothing in this division shall affect . . . (d) The right to provide by mutual or other insurance, or by arrangement with his employees, or otherwise, for the payment to such employees . . . of sick, accident, or death benefits, in addition to the compensation provided for by this division." The employer may not exact or receive from an employee any contributions or make or take any deductions from his earnings, directly or indirectly, to cover the whole or any part of the cost of compensation under the state act (§ 3751). The additional benefits, as well as the primary benefits, conferred upon the injured employee by the city charter are paid from tax funds. The voluntary payment from tax monies for these

additional benefits is probably justified by the peculiarly hazardous character of the work of a fireman or policeman. ■ The charter specifically provides, in section 172, that "Such disability benefits as are paid in the absence of payment of any benefits other than medical benefits under the workmen's compensation laws included in said Labor Code, shall be considered as in lieu of such benefits, payable to such person under the said Code concurrently with said disability benefits, and shall be in satisfaction and discharge of the obligations of the city and county to pay such benefits under the Labor Code." This section was obviously intended to provide that any payments made to an injured employee by the city should first be applied in satisfaction of its liability under the Labor Code.

We come then to the question: *What was the nature of the disability retirement allowances received by these claimants at or shortly prior to the time they filed claims with the state appeals board for permanent disability and medical care?*

■ To the extent that the payments were received at a time when disability was due under the Labor Code, they were "compensation" within the meaning of that code and served to toll the statute of limitations. ■ If, however, the payments were made more than a year after the city had fully satisfied and discharged its liability to the injured employees under the Labor Code, they were not "compensation" and did not toll the statute of limitations.

The fact that the payments were voluntarily made does not change their character, if no liability under the Labor Code remained extant. It has been held that payments voluntarily made to an injured employee, with knowledge by the employer of the injury and that the employee is not rendering services, are compensation, and not wages or gratuities, for the purpose of determining whether such payments tolled the statute of limitations. (*Bulger* v. *Industrial Acc. Com.,* 218 Cal. 716 [24 P.2d 796]; *Rendleman* v. *Industrial Acc. Com.,* 242 Cal.App.2d 32 [50 Cal.Rptr. 923]; *Morrison* v. *Industrial Acc. Com.,* 29 Cal.App.2d 528 [85 P.2d 186]; *London Guar. & Acc. Co.* v. *Industrial Acc. Com.,* 92 Cal.App. 298 [268 P. 670].) In each of the cited cases payments were made at a time when disability benefits were due, and claims therefor were filed within the time limit (six months then provided by the Labor Code from the receipt of compensation). The fact that the employers in those cases were private employers rather than a city and county, should not and does not change the character of the payment. ■ Here there was an agreement (the charter) between employer and employee regarding the discharge and satisfaction of disability benefits, although the employee was paid full salary while temporarily disabled. Even in the absence of such an agreement,

payment of full wages by a private employer to an injured workman during a period of temporary total disability discharges the liability of the employer for workmen's compensation. (*Herrera* v. *Workmen's Comp. App. Bd.*, 71 Cal.2d 254, 258 [78 Cal.Rptr. 497, 455 P.2d 425].)

When disability ceases the employee is entitled under the charter to employment at the rank held at the time of retirement. If his disability continues the employer agrees to pay him certain benefits over and beyond workmen's compensation benefits. The fact that both benefits may be contained in one pension check does not affect the nature of the payment. Both the Labor Code and the charter obligate the city to bear the cost of the employee's loss of earnings from a work-connected disability, not to compensate him for damages or suffering. Their purpose is to minimize the total economic loss to the employer, the employee or the public, by restoring him to productive life quickly through prompt medical treatment and the incentive of return to service. The additional benefits provided by the charter are probably, as above stated, to encourage persons to undertake the hazardous occupation of a fireman or police officer.

A somewhat similar situation was considered in *Evans* v. *Los Angeles Ry. Corp.*, 216 Cal. 495 [14 P.2d 752], involving payments to an injured city fireman under a Los Angeles city ordinance. There the action was brought by the employee against a third party tortfeasor. The city intervened seeking a lien upon any judgment paid the plaintiff and a recovery against the defendant for any future liability the city owed plaintiff under workmen's compensation. The state law required payment of compensation to the employee upon his becoming injured or disabled in the course of his employment, on a percentage of his salary. The ordinance required the city to pay his full salary during the period of his incapacity. It was held that in the absence of an express contrary statement in the ordinance, a reasonable interpretation thereof was that part of the salary received was deemed to be in payment of the city's obligation to give compensation. The same principle applies here, and to the extent that workmen's compensation was due the payment of salary and, subsequently, retirement allowance, was in discharge of such liability.

 The Labor Code does not impinge upon the city's right to reduce its pension payments during the period of time an injured employee is drawing full compensation. The employer may be credited for the amounts so paid. (§ 4909.) The city may claim a credit against its workmen's compensation liability commensurate with its contributions to the compensation or pension fund. (*City of Los Angeles* v. *Industrial Acc. Com.* (*Fraide*)

*supra,* 63 Cal.2d 242.) Here the contribution was 100 percent, and the allowance of credit would be 100 percent.

In a companion case to *Fraide, City of Los Angeles* v. *Industrial Acc. Com. (Dillin)* 63 Cal.2d 255 [46 Cal.Rptr. 105, 404 P.2d 809], the specific issue considered in the opinion was whether the city was estopped by its action to assert the defense of limitations. Necessarily involved therein, however, was the nature of the payments being made to Dillin under the city charter at the time he filed a claim with the state commission in 1962,— 27 years after the date of injury, and 21 years after the last medical treatment for such injury. The record contained a stipulation by the parties that there was a permanent disability rating of 69 percent attributable to the 1935 injury, equal to 276 weeks at $25 a week or $6,900 plus medico-legal costs. The commission allowed the city a credit of only $25 a week during the period in which the city had paid Dillin full salary, refused to allow it any credit for the disability pension paid thereafter, and awarded lifetime medical treatment. The city petitioned unsuccessfully for a Certificate of Satisfaction and applied for a lien against compensation to the extent due on the day of the filing thereof on the ground that by operation of charter section 182½ the payments previously made constituted compensation to the extent compensation was due. The city urged on appeal that since the ordinance providing for payment constituted an agreement the award ought to have credited the total amount paid during this period against the disability indemnity found due rather than credit only that amount the city would have been required to pay under a commission award of temporary disability indemnity for the same period, and that for the commission to refuse to credit the city with having discharged its liability under the Labor Code was arbitrary and capricious.

The Los Angeles city charter, section 182½, provided that if any member of the fire or police department was entitled to pension benefits under the charter and was granted any compensation or award under any general law providing for compensation or indemnity in case of sickness, injury or death arising out of the performance of his duty, then and in that event any payments made pursuant to the charter "shall be construed to be and shall be payments of such compensation or award under such general law, and any payments made under the provisions of this article shall be first applied to payment of such compensation or award and any balance of such payments made pursuant to the provisions of this article shall be pension payments; and it is hereby provided that the pension . . . shall be reduced in amount to the difference between the amount of pension provided for in this article and the total amount of such compensation or award granted and paid under such general law until the total amount awarded under such general law shall have been fully paid. After payment

of the total amount of such compensation or award granted under such general law the payments herein provided for shall continue as pension benefits subject to the provisions of this article." It was held that the statute of limitations barred Dillin's claim unless the city was estopped to assert the statute. This necessarily determined that the pension payments being received by Dillin at the time he applied to the state commission for workmen's compensation benefits were not "compensation" within the meaning of section 3207 and did not toll the statute of limitations prescribed in section 5405. Subsequent to the decision in *Dillin,* the state commission followed this same reasoning in deciding that the statute of limitations was not tolled by the payment of monthly disability pension where permanent disability due the employee had been satisfied more than a year before the claim was filed. (*Hall* v. *City of Los Angeles,* 31 Cal. Comp. Cases 444.) Re-examination of the decision in *Dillin* does not result in the conclusion that it was inadvertently decided, nor that the payments to the present claimants are of any different nature from those considered in *Dillin.*

 No permanent disability rating was made by the appeals board, nor was a request for such rating made by either the employer or employees prior to the filing of the claims herein. We are not informed what permanent disability ratings were made by the city retirement board in these cases. Presumably they were made in accordance with the compensation schedules (§ 4550 et seq.) and other pertinent sections of division 4 of the Labor Code. The referee refused to make a permanent disability rating in the case of Page, although requested so to do by the city.

*The statute of limitations.*

If the city's liability to the claimants under the state act was satisfied and discharged more than a year before these claims were filed with the appeals board, the receipt of disability retirement allowances by the claimants did not toll the statute. The limitations stated in section 5405 are in the alternative and are of equal force. The city must prove that the time has elapsed starting from any and all three of the points designated. (*Colonial Ins. Co.* v. *Industrial Acc. Com.,* 27 Cal.2d 437, 441 [164 P.2d 490].) None of the claims was filed within a year after the date of injury or after the last medical treatment requested or furnished for such injury. Whether the claims were filed within a year after the last payment of "compensation," within the meaning of Labor Code section 3207, will depend upon the permanent rating of claimants, and the cause must be remanded to the board to determine these ratings.

*Estoppel.*

The issue of estoppel is predicated, in the case of Quinn, upon the provision in section 172 of the charter regarding the payment of medical benefits; in the case of Paul, upon this provision plus a letter received by Paul at the time of his retirement. No estoppel was raised in the case of Page.

The disputed provision reads: "Medical treatment which may become necessary to relieve or cure said members from the effects of the injury or illness shall be furnished by the city and county, in the same manner that such treatment is furnished under said Labor Code, but without first requiring continuing awards of such treatment by the . . . [appeals board] relating to impairments of permanent or of extended and uncertain duration." At the referee hearing in *Quinn,* city officials testified as to their interpretation of section 172 in the administration of the retirement system. Daniel Mattrocce, general manager of the retirement system, and Leland G. Guth, compensation claims supervisor of the retirement system for more than 20 years, testified that this section has always been interpreted and administered to the effect that the statutes of limitation applicable under the Labor Code are applicable to the furnishing of medical treatment under section 172. Quinn did not testify.

Also in evidence in the referee hearing on Paul was a printed form letter dated January 8, 1965, with his name filled in, advising him that the effective date of his retirement was January 24, 1965, and that "The City and County of San Francisco will furnish through the Retirement System office and ward 45, San Francisco General Hospital, medical services or hospital care required because of the effects of the above injury. You may obtain such necessary hospital or medical care by request made through this office. . . . The City and County of San Francisco will not assume liability for the payment of medical services or hospitalization for the above injury, unless such care has been authorized by the Retirement Systems office." Paul did not testify.

Whether this letter constituted a continuing offer of medical services, unrestricted by any period of limitations contained in the Labor Code, or whether Paul reasonably believed that it so provided and relied upon it to his detriment, are questions of fact that should be determined by the appeals board. Whether the charter provision was reasonably relied upon by Quinn as entitling him to medical treatment for injuries of permanent or extended and uncertain duration without applying to the appeals board or without regard to any period of limitations, is also a question of fact.

It is therefore ordered that the awards be annulled and the causes remanded to the Workmen's Compensation Appeals Board for determination of the issue of estoppel in *Quinn* and *Paul;* and for determination of permanent disability rating in *Quinn, Paul,* and *Page,* consistent with the views expressed in this opinion.

Sullivan, Acting C. J., Peters, J., Tobriner, J., and Burke, J., concurred.