[No. B051429. Second Dist., Div. Seven. May 24, 1991.]

SHIRLEY J. CLARK, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, DEPARTMENT OF
YOUTH AUTHORITY et al., Respondents.

COUNSEL

Goldschmid, Silver & Spindel and Lawrence Silver for Petitioner.

Krimen, Hershenson, Da Silva & Daneri, Don E. Clark, William B. Donohoe and Neil P. Sullivan for Respondents.

OPINION

WOODS (Fred), J.—

## I.

### Introduction

We review a decision in which respondent Workers' Compensation Appeals Board (Board) concluded Shirley Clark's application for death benefits was barred by the statute of limitations. We agree.

## II.

### Statement of Facts

On July 15, 1987, John M. Clark filed an application for inter vivos workers' compensation benefits. The application was signed on July 13, 1987, on Mr. Clark's behalf by his wife, Shirley Clark. In the application Mr. Clark alleged he sustained industrial injury to his lungs and pulmonary system because of exposure to asbestos during the 1968 to 1974 period of his employment as a stationary engineer by the California Youth Authority.

Mr. Clark died on July 18, 1987. In the death certificate, Mr. Clark's physician, Dr. Allen Rosen, stated the death was caused by cardiorespiratory arrest, congestive heart failure, and emphysema. The death certificate did not mention asbestos exposure.

On November 2, 1988, Shirley Clark filed an application for death benefits under the same case number as her husband's application for inter vivos benefits. The employer asserted her application was barred by the statute of limitations.

The autopsy report stated Mr. Clark had congestive heart failure, cor pulmonale, marked bilateral emphysema, bilateral pleural effusions,

bilateral lower lobe pleural fibrosis, pulmonary edema, dehydration, and emaciation.

Dr. Ira Monosson interviewed Mrs. Clark on March 1, 1988, and reviewed pertinent medical records at the request of Mr. Clark's attorney. In a report dated May 23, 1988, Dr. Monosson reported that Mr. Clark's duties as a stationary engineer for the Youth Authority included removal of asbestos insulation from pipes and the interior of boilers and replacement of the insulation. Although the work generated asbestos dust, Mr. Clark had no special protective clothing or equipment and did not wear a respirator.

Dr. Monosson noted that Mr. Clark had "a morning cough" for "a number of years." In 1983 Mr. Clark was treated for laryngeal cancer. The laryngeal cancer treatment was successful, but Mr. Clark's cough became worse and by 1984 Mr. Clark had shortness of breath with exertion. By December 1986 Mr. Clark had chronic pleural effusions and was too ill to work.

Dr. Monosson further reported that in early 1987 Mr. Clark's asbestos exposure "surfaced" and Mr. Clark's primary treating physician informed Mr. and Mrs. Clark that the asbestos exposure had caused the pleural effusions. Dr. Monosson stated Mr. Clark's primary treating physician told Mrs. Clark to get an attorney and file a workers' compensation claim. Dr. Monosson noted Mrs. Clark did not read the autopsy report.

Dr. Monosson concluded the industrial asbestos exposure contributed to Mr. Clark's death by aggravating his emphysema.

Dr. Warren Roston opined the asbestos exposure did not contribute to Mr. Clark's death. Dr. Roston concluded the death was caused entirely by nonindustrial factors, including heavy smoking and severe alcohol abuse.

Mrs. Clark testified she first knew on March 1, 1988, that asbestos caused or contributed to her husband's death when she was so informed by Dr. Monosson. Upon cross-examination, she stated she signed Mr. Clark's application because he was not in any condition to sign it. She admitted she read the application before signing it, but stated she probably did not read it as thoroughly as she should have done. She knew her husband had a lung disorder.

Mrs. Clark further testified that when Mr. Clark was ill she thought the illness might have been caused by his work for the Youth Authority. When Mr. Clark worked for the Youth Authority, he told Mrs. Clark he had to "fire up" boilers insulated with asbestos, "repair[ ] the asbestos that was

wrapped around the pipes," and "clean[ ] out" boilers that contained asbestos.

Upon cross-examination, Mrs. Clark stated she told Dr. Monosson that Dr. Rosen told her to file a workers' compensation claim. She testified Dr. Rosen had told Mr. Clark to file the claim and she acted on her husband's instructions. Upon being asked when Dr. Rosen "either told [Mrs. Clark] or told [her] husband and [her] husband then directed [Mrs. Clark] to file a claim," Mrs. Clark testified: "It seems to me that it was some time [sic ] after my husband was first hospitalized in December of 1986." Upon being questioned by the workers' compensation judge (WCJ) as to whether "Dr. Rosen told you to get an attorney in December of '86," Mrs. Clark testified: "I believe that was the discussion." After Mrs. Clark answered the WCJ's question, her attorney objected on the grounds Mrs. Clark had testified Dr. Rosen told Mr. Clark to get an attorney in December 1986. Mrs. Clark then testified: "He didn't tell me. He told my husband and my husband asked me if I would." She later testified: ". . . I think my husband said Dr. Rosen thought it was a good idea for you to get an attorney because, evidently, my husband stated something about maybe one time being exposed to asbestos . . . ." Upon further questioning, Mrs. Clark stated she did not remember whether she was present when Dr. Rosen told her husband to get an attorney. Upon being asked whether she believed Mr. Clark's injuries were not work-related when she signed his application on his behalf, Mrs. Clark testified: "Not completely. I never did not feel that [Mr. Clark's injuries] weren't work related because, perhaps, my husband had said this is what it was, I always felt that it was work related."

Mrs. Clark stated Dr. Rosen did not tell her that Mr. Clark's ill health was due to his work. She asserted she did not read the autopsy report. She claimed she did not have any discussion with Dr. Rosen after Mr. Clark's death because the death certificate stated Mr. Clark died of cardiac arrest. Although she was aware that the death certificate also listed emphysema as a cause of death, she stated nothing in the death certificate suggested to her that Mr. Clark had asbestosis.

Although Mrs. Clark initially testified in essence that when Mr. Clark died she thought his death was work-related because "you can't help but assume that when all of a sudden someone has lung problems," she later testified merely that she thought it was possible his death was work-related.

Lawrence Silver, Mrs. Clark's attorney, testified he scheduled the interview with Dr. Monosson to determine whether the death was work-related. He further testified he believed the application for death benefits was merely an amendment to the application for inter vivos benefits.

The WCJ determined the application for death benefits was not barred by the statute of limitations. The WCJ based this determination on his finding that neither Shirley Clark nor her attorney knew Mr. Clark's death was work-related until Dr. Monosson's report was received.

The employer petitioned for reconsideration.

In his report on reconsideration, the WCJ determined Mrs. Clark first knew on March 1, 1988, that the death was work-related and therefore the application for death benefits was timely. The WCJ stated it would be unfair to charge Mrs. Clark with earlier knowledge the death was work-related in view of Dr. Roston's assertion the death was not industrially caused.

In a two-to-one decision after reconsideration, the Board determined the application for death benefits was barred by the statute of limitations. The Board majority found Mrs. Clark knew at the time of Mr. Clark's death that the death was work-related. The Board based this finding on the evidence that Mrs. Clark signed and read Mr. Clark's application during his life, that his application stated the injury occurred because of exposure to asbestos, that Mr. Clark was too ill to sign his application, and that Mr. Clark died three days after his application was filed.

The dissenting Board panel member concluded the application for death benefits was timely because it was an amendment to the application for inter vivos benefits. In the alternative, he found the application was filed within one year after the widow first had knowledge the death was work-related. He gave great weight to the WCJ's determination as to the credibility of Mrs. Clark and her attorney. He concluded that under Labor Code section 5406.5 dependents should not be deprived of death benefits before they know they have a claim. He stated Labor Code section 5406.5 was enacted to extend and protect the rights of survivors of workers who died from asbestos exposure and to insure claims for death benefits would not be extinguished before they arose.

## III.

### Contentions

Mrs. Clark contends the application for death benefits was timely filed because it was an amendment to the application for inter vivos benefits and

it was filed within one year after Mrs. Clark knew her husband's death was work-related.[1]

## IV.

### The Application for Death Benefits Is Independent of the Employee's Claim for Inter Vivos Workers' Compensation Benefits

■ In support of her contention that the death benefits application was an amendment to the inter vivos application, Mrs. Clark relies on *Glavich* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 517 [112 P.2d 774] and *Nino* v. *County of Los Angeles* (1982) 47 Cal.Comp.Cases 370 (in bank). As explained below, neither case supports her contention.

In *Glavich* the court stated in dictum that it may be true that when a worker has been awarded workers' compensation benefits during his life, his widow and minor children may be allowed death benefits incidental to the original proceedings. (*Glavich* v. *Industrial Acc. Com.*, *supra*, 44 Cal.App.2d at p. 521.) However, the court held the worker's claim for inter vivos benefits was severable from the dependents' claim for death benefits and thus the worker's failure to comply with the statute of limitations did not bar the application of his dependent minor children for death benefits. (*Glavich* v. *Industrial Acc. Com.*, *supra*, at p. 522, disapproved as to other points in *Bianco* v. *Ind. Acc. Com.* (1944) 24 Cal.2d 584, 591 [150 P.2d 806], and *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388 P.2d 353].) The court also held the widow's claim was barred by the statute of limitations because it was filed more than two years after the date of injury. (*Glavich*, *supra*, 44 Cal.App.2d at pp. 520-522, disapproved in *Bianco* v. *Ind. Acc. Com.*, *supra*, 24 Cal.2d at p. 591; see Stats. 1937, ch. 90, § 5406, p. 295.)

In *Bianco* v. *Ind. Acc. Com.*, *supra*, 24 Cal.2d 584, the court stated it may be that dependents may claim compensation of an employee during his life and thus toll the running of the statute of limitations (*id.* at p. 590), but the court held the claim for death benefits is independent of and severable from the application for inter vivos benefits. (*Id.* at pp. 589-590.) Since *Bianco*

---

[1]On April 8, 1991, three days before oral argument, the Board filed a letter requesting remand to enable a newly constituted panel to consider adoption of the dissenting opinion as a new majority opinion of the Board. We have read and considered the Board's letter. Because we conclude the issues raised have sufficient public importance and construction of Labor Code section 5406.5 appears to be a matter of first impression, the Board's 11th hour request for remand is denied. (See *Reese* v. *Kizer* (1988) 46 Cal.3d 996, 998, fn. 2 [251 Cal.Rptr. 299, 760 P.2d 495]; *Smith* v. *Board of Supervisors* (1989) 216 Cal.App.3d 862, 868 [265 Cal.Rptr. 466]; *Garfinkle* v. *Wells Fargo Bank* (1982) 135 Cal.App.3d 514, 520-521, fn. 6 [185 Cal.Rptr. 401].)

held the dependents' rights to death benefits are independent of and severable from the rights of the deceased employee, *Glavich* does not support Mrs. Clark's assertion that the death benefits application was merely an amendment to the application for inter vivos benefits.

*Nino* v. *County of Los Angeles, supra,* 47 Cal.Comp.Cases 370, involved a dispute as to the appropriate liability period under Labor Code section 5500.5 for a death benefits claim. A cumulative industrial injury application had previously been filed. The Board stated: "The subsequent application for death benefits, although perhaps involving a separate obligation which does not accrue until after the death, is still based on, and arises from, the claim of the cumulative injury as originally asserted in 1974." (*Nino, supra,* 47 Cal.Comp.Cases at p. 375.) Relying on *Glavich,* the Board held section 5500.5 as it read on the date of filing the cumulative injury application was controlling as to the appropriate liability period for the death benefits claim although section 5500.5 had been amended between the date of filing the cumulative injury application and the date of filing the application for death benefits. (*Nino, supra,* 47 Cal.Comp.Cases at pp. 375-376.) Since *Nino* did not involve a statute of limitations issue, it does not support Mrs. Clark's assertion.

In *Berkebile* v. *Workers' Comp. Appeals Bd.* (1983) 144 Cal.App.3d 940 [193 Cal.Rptr. 12], Division Four of this court held a dependent's right to death benefits is not derived from the rights of the deceased employee but rather is independent of and severable from the employee's claim for disability compensation. (*Id.* at p. 944; also see *Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 176, 187 [176 Cal.Rptr. 920].)

Based on the holdings in *Berkebile* and *Bianco,* we conclude the death benefits application was not an amendment to Mr. Clark's application but was instead an independent application.

V.

*The Board Properly Determined the Application for Death Benefits Is Barred by the Statute of Limitations*

 The pertinent statute of limitations is Labor Code section 5406.5. Section 5406.5 provides: "In the case of the death of an asbestos worker from asbestosis, the period within which may be commenced proceedings for the collection of the benefits provided by Article 4 (commencing with Section 4700) of Chapter 2 of Part 2 is one year from the date of death."

Labor Code section 4402, subdivision (a) defines asbestosis as follows: " 'Asbestosis' means any pathology, whether or not combined with preexisting pathology, which results in disability or need for medical treatment from inhalation of asbestos fibers." Section 4402, subdivision (b) provides: " 'Asbestos worker' means any person whose occupation subjected him or her to an exposure to asbestos fibers."

Sections 5406.5 and 4402 of the Labor Code were enacted by the passage of Assembly Bill No. 946, 1979-1980 Regular Session. Because prior versions of Assembly Bill No. 946 included proposed amendments to Labor Code section 5406 regarding asbestos workers, a discussion of Labor Code section 5406 is relevant to construction of section 5406.5. (See *Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 596 [262 Cal.Rptr. 46, 778 P.2d 174]; *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-625 [200 Cal.Rptr. 440, 677 P.2d 846]; *State Farm Mut. Auto. Ins. Co.* v. *Haight* (1988) 205 Cal.App.3d 223, 236 [252 Cal.Rptr. 162]; *Tafoya* v. *Hastings College* (1987) 191 Cal.App.3d 437, 447 [236 Cal.Rptr. 395].)

Labor Code section 5406 originally provided an application for death benefits could be filed within one year from the date of death and, in any event, within two years from the date of injury "except as otherwise provided in this section." (Stats. 1937, ch. 90, § 5406, p. 295.) Labor Code section 5406 further provided an application for death benefits could be filed within 240 weeks from the date of injury when the injury caused disability that continued until the employee's death if a disability payment had been made or agreed upon or workers' compensation proceedings had been timely instituted during the employee's life. (Stats. 1937, ch. 90, § 5406, pp. 295-296.)[2]

In *Bianco* v. *Ind. Acc. Com.*, *supra*, 24 Cal.2d 584, the court construed Labor Code section 5406 as allowing an application for death benefits to be filed within one year after the date of death or within two years after the date of injury. (*Bianco*, *supra*, 24 Cal.2d at p. 587.)

In 1947 Labor Code section 5406 was amended to provide an application for death benefits could be commenced within one year from the date of death if death occurred within one year after the date of injury or within one

---

[2]As originally enacted, Labor Code section 5406 provided: "The periods within which may be commenced proceedings for the collection of the death benefit provided by Article 4, of Chapter 2, of Part 2 of this division are as follows: [¶] (a) One year from the date of death, and in any event within—[¶] (1) Two years from the date of injury, except as otherwise provided in this section. [¶] (2) 240 weeks from the date of injury, where the injury causing death also caused disability which continued to the date of death and for which a disability payment has been made, or agreed to be made, or proceedings for its collection had been instituted within the time limits set forth in section 5405. [¶] (b) Two years from the date of injury, in cases described in section 5405(b)." (Stats. 1937, ch. 90, § 5406, pp. 295-296.)

year after the date benefits were last furnished if death occurred more than one year after the date of injury. Section 5406 was also amended to provide: "No such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury." (Stats. 1947, ch. 1034, § 4, p. 2307.)[3]

In *Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409 [289 P.2d 229], the application for death benefits was filed within one year after the date of death but more than one year after the date of injury. (*Id.* at p. 410.) The Supreme Court held the application was barred by the language in Labor Code section 5406 prohibiting any proceeding for death benefits from being commenced more than 240 weeks after the date of injury. (*Ruiz, supra,* 45 Cal.2d at pp. 412-414.) The court stated: "It is true, as petitioner argues, that all provisions of the workmen's compensation law should be liberally construed to effect the law's beneficent purposes [citation], but that does not mean that the Legislature's intent as expressed in the statute can be ignored. [Citations.]" (*Ruiz, supra,* 45 Cal.2d at p. 413.) The court concluded the Legislature had amended section 5406 to abrogate the Supreme Court's construction of that statute in *Bianco* v. *Ind. Acc. Com., supra,* 24 Cal.2d 584. (*Ruiz* v. *Industrial Acc. Com., supra,* 45 Cal.2d at pp. 412-413.) The court stated: "[T]he time limitation appears to be not a normal statute of limitations, but rather to be more in the nature of a qualifying condition in the exercise of any right to death benefits. Diligence in the presentation of the claim, so as not to be guilty of sleeping on one's rights, apparently has no bearing if the specified time provisos are not satisfied." (*Ruiz, supra,* 45 Cal.2d at p. 414.)

In *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569 [68 Cal.Rptr. 164, 440 P.2d 236], the court held the date of injury in a cumulative industrial injury case is the date on which the employee first suffered disability from the injury and knew or in the exercise of reasonable diligence should have known the disability was caused by his employment. (*Id.* at pp. 571, 576, 577.) Citing *Bianco* v. *Ind. Acc. Com., supra,* 24 Cal.2d 584, the court stated: "Limitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise

---

[3]Labor Code section 5406 currently provides: "Except as provided in Section 5406.5, the period within which may be commenced proceedings for the collection of the benefits provided by Article 4 (commencing with Section 4700) of Chapter 2 of Part 2 is one year from:

"(a) The date of death where death occurs within one year from date of injury; or

"(b) The date of last furnishing of any benefits under Chapter 2 (commencing with Section 4550) of Part 2, where death occurs more than one year from the date of injury; or

"(c) The date of death, where death occurs more than one year after the date of injury and compensation benefits have been furnished.

"No such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury."

compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues. [Citations.]" (*Freuhauf Corp.*, *supra*, 68 Cal.2d at p. 577.)

In *Arndt* v. *Workers' Comp. Appeals Bd.* (1976) 56 Cal.App.3d 139 [128 Cal.Rptr. 250], the employee died as a result of mesothelioma, which was caused by industrial asbestos exposure. About two years after the employee's death, his widow first learned mesothelioma was caused by exposure to asbestos or related substances. She filed the application for death benefits more than one year after the date of death and more than 240 weeks after the last exposure to asbestos but within several months after she learned the death was work-related. Relying on *Fruehauf*, the court construed Labor Code section 5406 as allowing a dependent to file an application for death benefits within one year after the dependent knew or in the exercise of reasonable diligence should have known the death was industrially caused. (*Arndt*, *supra*, 56 Cal.App.3d at p. 149.) The court distinguished *Ruiz* on the grounds that there the court had before it no contention or evidence industrial causation of the worker's death was not known or in the exercise of reasonable diligence would not have been known to the applicant within one year after the date of death or within two hundred forty weeks after the date of injury. (*Arndt*, *supra*, 56 Cal.App.3d at p. 149.)

In *Berkebile* v. *Workers' Comp. Appeals Bd.*, *supra*, 144 Cal.App.3d 940, the employee alleged he sustained industrial injury to his lungs from exposure to asbestos and diatomaceous earth during employment from 1934 to 1942. He died in October 1980, and his widow filed an application for death benefits about one month later. She had first learned of the industrial injury in August 1979. Relying on *Arndt* and *Fruehauf*, Division Four of this court held the death benefits application was timely because it was filed within one year after the date of death and within two hundred forty weeks after the widow first knew her husband's illness was industrial. (*Berkebile*, *supra*, at pp. 944-945.)

In the May 23, 1979 Assembly amendment to Assembly Bill No. 946, it was proposed that the last sentence of Labor Code section 5406 be deleted. As noted, *ante*, page 693, footnote 3, that sentence reads: "No such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury." An Assembly amendment on January 28, 1980, replaced the last sentence of section 5406 with the following: "Except in the case of the death of an asbestos worker from asbestosis, as defined in subdivisions (a) and (b) of Section 4402, no such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury." A Senate amendment on March 24, 1980, expanded the exception in the last sentence of section 5406 to extend to death from pneumoconiosis or other latent respiratory disease. A

further Senate amendment on May 29, 1980, replaced the last sentence of section 5406 with the following: "No such proceedings may be commenced more than one year after the date of death. Except in the case of the death of an asbestos worker from asbestosis, as defined in subdivisions (a) and (b) of Section 4402, and in the case of the death of an injured worker from pneumoconiosis or other latent respiratory disease, no such proceedings may be commenced more than 240 weeks from the date of injury." Ultimately, Assembly Bill No. 946 was further amended to provide no change in the last sentence of section 5406 and to add Labor Code section 5406.5.

The Legislative Counsel's Digest states in pertinent part: "Existing law provides that no proceedings for the collection of workers' compensation death benefits may be commenced more than one year after the date of death, or more than 240 weeks from the date of injury. [¶] This bill would provide that in cases where the death of an asbestos worker is from asbestosis, no proceedings for such benefits may be commenced more than one year from the date of death." (Legis. Counsel's Dig., Assem. Bill No. 946, 4 Stats. 1980 (Reg. Sess.) Summary Dig., p. 319.) However, as noted, *ante*, page 691, the actual language of Labor Code section 5406.5 provides that in the case of the death of an asbestos worker from asbestosis, "the period within which may be commenced proceedings for the collection of [death benefits] is one year from the date of death."

In construing Labor Code section 5406.5, we note that when the language of a statute does not shed light on the Legislature's intent, that intent may be determined from other factors. (*Nunn* v. *State of California*, *supra*, 35 Cal.3d at p. 624.) The words of the statute must be construed in context, keeping in mind the nature and purpose of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Our Supreme Court has stated the rule of liberal construction applies to all aspects of workers' compensation law. (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618]; see Lab. Code, § 3202.) Although the Legislative Counsel's Digest may be helpful in construing an ambiguous statute, the digest is not controlling when the digest conflicts with unambiguous statutory language or the Legislature's intent is clearly shown by the statute's background and history. (*In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 916-917 [203 Cal.Rptr. 331].)

Successive drafts of a bill may be helpful in construing a statute if the meaning of the statute is unclear. (*State Farm Mut. Auto. Ins. Co.* v. *Haight*, *supra*, 205 Cal.App.3d at p. 236.) The Legislature is presumed to have in mind existing law when it passes a statute (*Cumero* v. *Public Employment Relations Bd.*, *supra*, 49 Cal.3d at p. 596), and, when the

Legislature has carefully employed a term in one place and excluded it in another, the term should not be implied where it has been excluded (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406]).

 We presume the Legislature was aware of the history of Labor Code section 5406 and the *Ruiz, Fruehauf, Arndt,* and *Berkebile* decisions when it enacted Labor Code section 5406.5. In view of the Legislature's decision not to include any portion of the final sentence of section 5406 in section 5406.5, we hold, based on the reasoning of *Fruehauf, Arndt,* and *Berkebile* and the history of section 5406, that the limitations period of section 5406.5 is tolled until the dependent of the deceased asbestos worker knows, or in the exercise of reasonable diligence should know, the worker's death was caused by the employment.

We conclude, however, that substantial evidence supports the Board's finding that Shirley Clark failed to file the death benefits application within one year after she knew her husband's death was work-related. (See *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Alford* v. *Industrial Accident Com.* (1946) 28 Cal.2d 198, 204-206 [169 P.2d 641]; *Nielsen* v. *Workers' Comp. Appeals Bd.* (1985) 164 Cal.App.3d 918, 929-930 [210 Cal.Rptr. 843].)

In *Alford* the court concluded the Industrial Accident Commission reasonably found the employee knew his disability was industrially caused without being so informed by a physician in view of the employee's receipt of medical treatment and statement to his employer that his work conditions might be fatal. (*Alford* v. *Industrial Accident Com., supra,* 28 Cal.2d at pp. 204-206.)

In *City of Fresno* v. *Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 467, 473 [209 Cal.Rptr. 463], the court stated: "[A]n applicant will not be charged with knowledge that his disability is job related without medical advice to that effect unless the nature of the disability and applicant's training, intelligence and qualifications are such that applicant should have recognized the relationship between the known adverse factors involved in his employment and his disability." In *City of Fresno* the applicant formed the belief more than one year before filing his application that his cardiac problems were job-related, but his belief was not based on medical advice. The court determined substantial evidence supported the Board's decision that the employee was not chargeable with knowledge his disability was work-related before being so informed by a physician. (*Id.* at pp. 473-474.)

In *Nielsen* v. *Workers' Comp. Appeals Bd., supra,* 164 Cal.App.3d 918, the court stated: "[T]he absence of a medical opinion confirming industrial

causation is but one important circumstance which is to be considered together with the other circumstances in determining in a particular case whether the applicant should reasonably have known his or her injury was industrially caused. [Citations.]" (*Id.* at p. 930.) In *Nielsen* the employee stated he thought the first day he was off work that his condition was work-related and he suggested to the first physician he consulted that his condition might have been caused by lifting and bending at work. (*Id.* at p. 927.) Relying on *Alford*, the court concluded substantial evidence supported the Board's finding that the employee knew or reasonably should have known as soon as he left work that his disability was caused by the employment. (*Nielsen, supra,* 164 Cal.App.3d at pp. 926-931.)

In the present case, the Board reasonably found Shirley Clark knew more than one year before she filed the application for death benefits that her husband's death was industrially caused in view of the evidence that she signed his workers' compensation application several days before his death because he was too ill to sign it, her admission she read the application, her receipt of the death certificate, which listed emphysema as a cause of death, and her testimony she believed his death was work-related.

### Disposition

The May 23, 1990, decision after reconsideration by respondent Workers' Compensation Appeals Board is affirmed. Each party shall bear its own costs.

Lillie, P. J., concurred. Johnson, J., concurred in the judgment only.

Petitioner's application for review by the Supreme Court was denied July 31, 1991. Mosk, J., was of the opinion that the application should be granted.