[No. D022487. Fourth Dist., Div. One. May 7, 1996.]

Conservatorship of the Person and Estate of LILLIAN R. BRYANT.
CAROL S. BROWN, as Conservator, etc., Petitioner, v.
CHARLES BROWN, Objector and Appellant;
LILLIAN R. BRYANT, Conservatee and Respondent.

## COUNSEL

Charles P. Brown for Objector and Appellant.

Linda M. Fabian for Conservatee and Respondent.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Lewis P. Zollinger, Deputy County Counsel, as Amici Curiae.

## OPINION

**BENKE, J.**—This is an appeal from a probate court order denying attorney compensation in a conservatorship.

We hold that under Probate Code[1] section 2645, subdivision (b), an attorney who is related to a conservator must show that his representation, as opposed to the representation otherwise available, was to the advantage, benefit and best interest of the conservatee. The appellant in this case made no such showing and accordingly he may not recover fees incurred following the effective date of section 2645, subdivision (b).

### FACTUAL HISTORY

Carol S. Brown (Carol Brown)[2] was originally appointed to act as the temporary conservator of the person and estate of Lillian R. Bryant on March 12, 1993. Sometime later Carol Brown retained her husband, objector and appellant Brown (Brown), to perform legal services for her in her capacity as conservator. On April 23, 1993, the probate court approved a general conservatorship of Bryant and appointed Carol Brown conservator.

In early 1994 the probate court expressed to Brown its concern that under section 2645, subdivision (b), which became effective on January 1, 1994, Brown could no longer recover fees incurred in representing his wife as conservator.

On June 30, 1994, Carol Brown filed an accounting and petition for approval of her fees and her husband's fees. After a hearing, the probate court approved payment of the conservator's fees but not the attorney fees requested on behalf of Brown. The court continued the matter to permit Brown to file a brief regarding section 2645, subdivision (b).

In the brief he submitted to the probate court Brown argued section 2645 merely required he show the services he rendered benefited the conservatee. He further argued the services he rendered had in fact benefited the conservatee. However Brown made no showing that his services, as opposed to the

---

[1] All statutory references are to the Probate Code unless otherwise specified.

[2] Carol S. Brown has not taken any part in this appeal. Rather, the interests of the conservatee have been asserted by guardian ad litem Neil Trop.

services available from other attorneys, were of any special advantage or benefit to the conservatee. Upon consideration of Brown's brief the probate court refused to approve payment of fees to Brown insofar as the fees were for services rendered after the effective date of section 2645, January 1, 1994.[3]

Brown filed a timely notice of appeal.

## DISCUSSION

Section 2645 provides in part: "(a) No attorney who is a guardian or conservator shall receive any compensation from the guardianship or conservatorship estate for legal services performed for the guardian or conservator unless the court specifically approves the right to the compensation and finds that it is to the advantage, benefit, and best interests of the ward or conservatee.

"(b) No parent, child, sibling, or spouse of a person who is a guardian or conservator, and no law partnership or corporation whose partner, shareholder, or employee is serving as a guardian or conservator shall receive any compensation for legal services performed for the guardian or conservator unless the court specifically approves the right to the compensation and finds that it is to the advantage, benefit, and best interests of the ward or conservatee."

On appeal Brown argues that when legal services have been provided by a conservator, someone related to the conservator or someone who is a law partner or employee of the conservator, payment for those services is permissible under section 2645 so long as the conservatee benefited from the services. We disagree.

"Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both

---

[3]It is undisputed that Brown's services and the fees requested were within local guidelines. Moreover, there is no indication of any wrongdoing on the part of the attorney or the conservator.

internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) " 'Rules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences.' " (*Ford* v. *Gouin* (1992) 3 Cal.4th 339, 348 [11 Cal.Rptr.2d 30, 834 P.2d 724].)

 ██ ██ Section 2645 was a part of Assembly Bill No. 21 (1993-1994 Reg. Sess.) enacted by the Legislature in 1993. Assembly Bill No. 21 represented an extension of the Legislature's continuing effort to combat "financial abuse" of elderly and dependent persons. (See Assem. Com. on Judiciary, hearings on Assem. Bill No. 21 (1993).)[4] Specifically, Assembly Bill No. 21 was initiated in response to activities of a probate attorney engaged in a series of questionable activities. (*Ibid.*) His activities were the subject of media attention and included having himself named as conservator of a client and subsequently authorizing payment of large sums of money to his law partners for legal services. (*Ibid.*) "The overriding intent of AB 21 is to clearly and unambiguously prohibit the most patently offensive actions of [the attorney] while not unreasonably encumbering the practice of probate law." (*Id.* at p. 4.)

In addition to enactment of section 2645, Assembly Bill No. 21 amended section 10804. As amended section 10804 provides that an attorney may not receive compensation as both a personal representative and as an estate attorney, notwithstanding any provision in decedent's will, "unless the court specifically approves the right to the compensation in advance and finds that the *arrangement* is to the advantage, benefit, and best interests of the decedent's estate." (§ 10804, italics added.)

Contrary to Brown's argument on appeal, the language and history of the statute make it clear the Legislature intended that two separate and distinct criteria be met before compensation under either subdivision (a) or subdivision (b) of section 2645 may be awarded. Under both subdivisions the court

---

[4]Statements made during the legislative process and reflected in the records of the legislative hearings are useful in determining legislative intent; letters written by legislators reflecting their personal opinions are not. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].) Thus we rely on the record of the legislative hearings on Assembly Bill No. 21 and reject the letters from authors of Assembly Bill No. 21 offered by Brown and written after enactment of section 2645.

must specifically approve the "right to the compensation." If, as Brown suggests, the Legislature intended that courts assure themselves only that the conservatee received valuable services, no further language was needed. Indeed, if the Legislature had intended that proof of the right to compensation be the only requirement for compensation, it did not need to enact section 2645. Prior to enactment of section 2645 an attorney acting as a conservator could recover fees for legal services he rendered on behalf of a conservatorship estate if the probate court found the conservatorship estate realized a benefit from the legal services. (See *Conservatorship of Gray* (1970) 12 Cal.App.3d 513, 521 [90 Cal.Rptr. 776].)

However, in addition to requiring a finding as to the right to fees, the Legislature added the phrase, "and finds that it is to the advantage, benefit, and best interests of the ward or conservatee." This second phrase must be given some significance in both subdivision (a) and subdivision (b) of section 2645. " 'Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law.' " (*County of Alameda* v. *Clifford* (1960) 187 Cal.App.2d 714, 722 [10 Cal.Rptr. 144].) By finding that the second phrase requires proof that the services rendered by counsel provided some benefit that would not otherwise be available to the conservatorship estate, the phrase and the statute itself are given a meaning which clearly aids in effectuating the overall purpose of preventing actual self-dealing or the appearance of impropriety.

Our construction of section 2645 is supported by consideration of the amendment to section 10804 which was also part of Assembly Bill No. 21. As we have noted, "[s]ignificance, if possible, should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as 'the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citation.]" (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) The fact section 2645 and the amendments to section 10804 were enacted at the same time, by the same bill and the fact both provisions govern attorneys who act in dual capacities, require that the two provisions be interpreted coherently. (147 Cal.App.3d 18.) The need for a coherent and consistent interpretation of these provisions is underscored by the fact that in any number of instances the attorney for the conservatorship will eventually become the attorney for the later decedent's estate. Imposing one lower standard at the conservatorship stage and then imposing a different higher standard when a decedent's estate becomes necessary, would make very little sense in terms of protecting conservatees and estates, assuring fair compensation to counsel, or limiting unnecessary burdens on probate courts. Thus, the express reference in amended section

10804 to the benefit provided by the "arrangement" adds substantial support to our conclusion that in order to recover attorney fees, an attorney who is a conservator or related to a conservator must show, in addition to a right to fees, that his representation, as opposed to representation otherwise available, benefited the conservatorship estate.[5] Here Brown did not attempt to make any such showing. Thus, the trial court properly denied his application

[5]As passed by the Assembly, Assembly Bill No. 21 used the same language in both sections 2645 and 10804 to describe the findings necessary before compensation could be paid to attorneys playing dual roles in a conservatorship or estate. The Assembly version of section 2645, like the final version of section 10804, permitted payment of compensation "unless the court specifically authorizes the compensation *in advance and finds that the arrangement* is to the advantage, benefit, and best interests of the ward or conservatee." (Legis. Counsel's Dig., Assem Bill No. 21 (1993-1994 Reg. Sess.).) In the Senate, section 2645, subdivisions (a) and (b), were amended by replacing the phrase "in advance and finds that the arrangement is to the advantage" in each subdivision with the phrase "and finds it is to the advantage." (*Ibid.*) At the time this change to section 2645, subdivisions (a) and (b), was made the Senate also added subdivision (d) to section 2645, which permits the probate court to approve the fees either at the time a conservator is appointed, at the time a plan for the conservator's estate is apporved, an account is settled, or a separate petition is approved. (*Ibid.*) No similar changes were made to section 10804.

Contrary to our colleague's interpretation, the Senate's deletion of the requirement for advance approval of dual roles in section 2645 and its retention in section 10804 did not represent any conscious effort by the Legislature to provide conservatees with less protection from unscrupulous attorneys than the estates of decedents. In this regard the Assembly analysis describing the amendments made in the Senate is instructive. According to the Assembly analysis: "The Senate amendments: [¶] 1) Delete the provisions of the bill forbidding an attorney from drafting a trust instrument in which he or she is named trustee. [¶] 2) Create a presumption that an attorney who drafts a trust instrument in which he or she is named the sole trustee shall be removed as trustee. [¶] 3) Restrict greatly the capacity of a self-appointed trustee to waive (in the instrument he or she drafts) the obligation to make accountings to the beneficiaries. [¶] 4) *Make a series of technical changes.*" (Sen. Amend. to Assem. Bill No. 21 (1993-1994) July 8, 1993, italics added.) Because the alteration of section 2645 in the Senate is not otherwise described in the Assembly's analysis, logic would suggest it was one of the technical changes made by the Senate.

One need only examine the already existing and closely related provisions of section 2640 to appreciate the need for a technical change to section 2645 with respect to the issue of advance approval of attorney compensation. At the time Assembly Bill No. 21 was being considered, section 2640, subdivision (c), had itself been recently amended to provide in pertinent part: "The compensation allowed to the guardian or the conservator of the person, the guardian or conservator of the estate, and to the attorney may, in the discretion of the court, include compensation for services rendered *before the date of the order appointing the guardian or conservator.*" (See Stats. 1992, ch. 572, § 8, italics added.) Unlike the circumstances which give rise to the need for establishment of a decedent's estate, establishing the circumstances which support imposition of a conservatorhsip may involve a great deal of prepetition effort by a prospective conservator and his counsel; thus the utility of permitting the conservator and his counsel to recover fees incurred before appointment of a conservator is self-evident. However by requiring advance approval of dual compensation in conservatorship cases, the Assembly version of section 2645 would have effectively eliminated the ability of dual capacity attorneys to recover fees incurred before entry of an order appointing a conservator. Hence the need for a technical change by way of the Senate amendments replacing advance approval of arrangements, which in the case of conservatorships will no

for payment of fees for services rendered after the effective date of section 2645, January 1, 1994.

## DISPOSITION

Order affirmed

Huffman, J., concurred.

**WORK, Acting P. J.**—I respectfully dissent.

Probate Code section 2645, subdivision (b), effective January 1994, reads as follows: "No parent, child, sibling, or spouse of a person who is a guardian or conservator, and no law partnership or corporation whose partner, shareholder, or employee is serving as a guardian or conservator shall receive any compensation for legal services performed for the guardian or conservator unless the court *specifically approves the right to the compensation and finds that it is to the advantage, benefit, and best interests of the ward or conservatee.*" (Italics added.) On its face, this section is unambiguous, requiring only that the court assure itself the compensation requested is commensurate with the advantage, benefit and interests of the ward or conservatee the legal services promoted.

Determined to find ambiguity where none exists, the majority, in a feat of legerdemain worthy of David Copperfield, ignores the plain language of Probate Code[1] section 2645, subdivision (b), the rules of statutory interpretation and its obligation to defer to legislative action. The majority creates the illusion of ambiguity in section 2645, subdivision (b) by referring to different language in section 10804, a different statute addressing different legal relationships which the Legislature could well perceive as requiring a more stringent judicial oversight. To achieve its result, the majority was required to judicially reintroduce by implication language into section 2645, subdivision (b) which expressly had been removed from Assembly Bill No. 21 (1993-1994 Reg. Sess.) with the joint approval of the Assembly and Senate before its enactment.

In purporting to find a policy basis for its holding, the majority ignores the fundamental principle that it is the Legislature's role to establish public

---

doubt already exist, with approval of fees after they are incurred but subject to the same substantive standard.

In sum then, rather than suggesting any difference in the substantive standards to be applied in compensating counsel for conservatees and counsel for decedents estates, the history of Assembly Bill No. 21 confirms that at all times the Legislature intended that, insofar as it is practical, counsel who are engaged in representing conservatorships and estates be subjected to the same level of scrutiny.

[1] All statutory references are to the Probate Code.

policy through statutory enactment. Here, the lengthy legislative history of Assembly Bill No. 21 conclusively establishes the Legislature deliberately chose to establish a separate and differing judicial oversight standard for reviewing attorney fees claims involving relationships subject to section 2645, subdivision (b) from those requests covered by section 10804 made by attorneys who act both as conservator and as attorney for the conservatorship by virtue of their self-appointment, and then seek to recover separate fees for acting in each capacity.

## I

Our primary task in interpreting a statute is to determine the intent of the Legislature so as to effectuate the underlying purpose of the enactment. (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) We first look to the statutory language, for the words chosen by the Legislature are the best indicators of its intent. (*Ibid.*; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) The court attributes to statutory language "its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences [which] will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) It is an often stated rule of statutory construction "[t]he provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]" (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].) Moreover, the court should not ignore considerations such as context, the object in view, the evil sought to be remedied, the history of the times and legislation on the same subject, public policy and contemporaneous interpretation. (*Ibid.*; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260]; *United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263].)

## II

In this case, the legal services rendered by Attorney Charles Brown on behalf of conservatee Lillian R. Bryant at the behest of his wife, Carol S. Brown, Bryant's temporary conservator, are fully documented.[2] There is no dispute but that the services were reasonably necessary, benefited the estate and the fees requested were well below the local guidelines. Nor is there any suggestion of wrongdoing on the part of either the attorney or conservator and the court was formally notified of the spousal relationship. However, the trial court found section 2645, subdivision (b) to be ambiguous and held the conservatorship estate was not required to compensate Charles for the benefits it received absent a showing the estate received extra benefit because of his spousal relationship with the conservator.

Faced with an issue of first impression it raised on its own motion, the trial court determined the "it" referred to in section 2645 which must be found to have benefited the conservatee, is the *relationship* between the attorney and the conservator. The trial court declared its interpretation was consistent with the different language added to section 10804 in Assembly Bill No. 21, the same bill which generated section 2645, subdivision (b). However, section 10804 addresses a different legal scenario, prohibiting an attorney from receiving double compensation when that lawyer serves both as personal representative and as attorney for him/herself *unless* the court specifically "approves the right to the compensation in advance and finds that the *arrangement* is to the advantage, benefit, and best interest of the decedent's estate." (Italics added.) Thus, not only is the language in section 10804 different from section 2645, subdivision (b), the sections deal with different factual situations, a truth of which the legislators were keenly aware.

Before the enactment of section 2645, effective January 1, 1994, there were no statutory restrictions on the ability of an attorney to obtain compensation for services rendered to a conservatorship estate because of any familial or business relationships with the conservator. Although such compensation was subject to judicial oversight, section 2640 *required* the court to grant any compensation request once it determined the amount was reasonable for the services rendered to the conservator or conservatee.[3] In 1991 and 1992, revelations surfaced that an Orange County attorney, James

---

[2] Initially the attorney was retained by the conservatee's niece and filed a petition to establish a conservatorship at the relative's request. The court, thereafter, appointed his wife as the conservator.

[3] Some of Charles's services were rendered before the effective date of section 2645. As to those, the court stated it would order compensation after reviewing an itemized request.

D. Gunderson, may have defrauded as many as 7,000 senior residents of Leisure World, by drafting wills naming himself as a major or sole beneficiary of large estates to the exclusion of more natural beneficiaries, creating trust documents naming himself exclusive trustee of large discretionary estates, as trustee authorizing payment of large sums of money to his law partners for legal services, expending money contrary to the instructions of a trust settlor to benefit businesses or charities in which he had a significant or controlling interest, having himself named conservator of a client and then drafting wills naming himself a primary or exclusive beneficiary and investing trust assets in financial institutions owned or controlled by him. The allegations against Gunderson became the subject of a state investigation, inspired the Orange County Sheriff's Department to establish a hot line in its fraud unit to collect information about Gunderson's possible criminal conduct and caused the Orange County Probate Court to initiate a review of all matters handled by him.

The report of Gunderson's self-dealing and extensive fraud was the catalyst for Assemblyman Umberg to introduce Assembly Bill No. 21, December 7, 1992. Of great concern was the fact that Gunderson would not only prepare a will for mentally incompetent elderly clients naming himself as exclusive beneficiary, but would insert no contest clauses to intimidate natural beneficiaries (often immediate family members) from attacking the will. Although Assembly Bill No. 21 encompassed several related matters, representatives of Assemblyman Umberg's office stated "the primary purpose of A.B. 21 is to strictly forbid attorneys from drafting (or causing to be drafted) wills that leave themselves, or relatives or business partners, any gifts." Thus, the Legislative Counsel's Digest to the bill text as introduced describes the underlying purpose of the proposed legislation as follows:

"Existing law provides for the enforcement of a no contest clause in an instrument. A no contest clause is not enforceable against a beneficiary to the extent that a beneficiary, with probable cause, contests a provision that benefits a person who drafted the instrument.

"This bill would provide that a no contest clause is not enforceable against a beneficiary if the person who drafted the instrument stands to receive, as a beneficiary, more than $500 or 5% of the estate, whichever is greater. The bill would also provide that this restriction does not apply if the drafter is an immediate family member." (Assem. Bill No. 21 (1993-1994 Reg. Sess.) as introduced Dec. 7, 1992.)

As the legislation wound its way through the Assembly and Senate, it was expanded substantially and modified significantly on several occasions. For our purposes, it is sufficient to note that by January 21, 1993, it had been amended to include a proposed new statute, section 2645, which as initially

drafted in subdivision (b), imposed a condition precedent which would have prevented law firms of which an estate guardian or conservator was a member from being compensated for legal services *"unless the court specifically authorizes the legal services and rate of compensation therefore in advance and finds that the arrangement would be to the advantage, benefit, and best interests of the ward or conservatee."* The same amendment included a proposed modification to section 10804.[4] The January 1993 Assembly Bill Amendment proposed deleting "[u]nless expressly authorized by the decedent's will" so that double compensation for *dual representation by an attorney* would be permitted only where a court specifically authorized the legal services and rate of compensation in advance *and* finds the arrangement to be made to the advantage and best interest of the decedent's estate. Thus, as of the January 1993 amendment, Assembly Bill No. 21 would require advance court authorization of the legal services and rate of compensation *and* a finding the *arrangement* would be to the advantage, benefit, and best interests of the ward or conservatee, in *both* those situations where an attorney attempted to collect two fees for conservator/attorney services (§ 10804) and those in which there were designated relationships between the attorney and conservator even though each provided independent and separate reasonable services to the conservatee's estate (§ 2645). This identity was soon removed.

"The evolution of a proposed statute after its original introduction in the Senate or Assembly can offer considerable enlightenment as to legislative intent." (*People* v. *Goodloe* (1995) 37 Cal.App.4th 485, 491 [44 Cal.Rptr.2d 15].) Successive drafts of a bill may be helpful in interpreting a statute the meaning of which is unclear. (*Clark* v. *Workers' Comp. Appeals Bd.* (1991) 230 Cal.App.3d 684, 695 [281 Cal.Rptr. 485]; *State Farm Mut. Auto. Ins. Co.* v. *Haight* (1988) 205 Cal.App.3d 223, 236 [252 Cal.Rptr. 162].)

Not surprisingly, Assembly Bill No. 21 underwent many more amendments. The Assembly amendments of January 21 and February 4, 1993, made no change in section 2645, subdivision (b) and no relevant change to section 10804. Following Assembly amendments of January 21, February 4 and February 22, 1993, section 2645 now proposed adding subdivision (c) which refers to the right of a parent, child, sibling or spouse of an estate guardian or conservator to receive compensation for legal services. Those proposed amendments specifically would have expressly prohibited a spousal attorney from receiving compensation "unless the court specifically

---

[4]Before this modification, section 10804 permitted an attorney to receive double compensation for acting both as the personal representative for the estate and as attorney if expressly authorized to receive dual compensation in a decedent's will, an exception of which Gunderson took full advantage.

authorizes the compensation in advance and finds that the *arrangement* is to the advantage, benefit, and best interests of the ward or conservatee." (Italics added.) The proposed amendment to section 10804 continued to require advance authorization to the compensation and a finding the *arrangement* be to the advantage, benefit and best interests of the decedent's estate.

Assembly Bill No. 21 was considered and amended in the Senate on May 6, 1993. On that date, section 2645, subdivision (b) was substantially amended. For our purposes it is important to note that the amendment proposed consolidating the restrictions on familially related attorney/conservators with the revisions on law partner relationships and recommended *deleting* the requirement that the court specifically authorize compensation in advance and *deleting* the language requiring a finding the *arrangement* be to the advantage, benefit and best interests of the conservatee. The May 6 amendment did not propose deleting that language from section 10804.

The Senate amendments of June 17, June 30, and the last amendment of July 18, 1993, made no change to the proposed language of section 2645, subdivision (b) except for replacing the phrase "unless the court specifically *authorizes*" with the phrase "unless the court specifically *approves the right to*" the compensation. However, although the amendments of June 17, June 30 and July 18 set out the proposed language of sections 2645 and 10804 in sequence and on the same page, the amendments to section 2645, subdivision (b) removing the word *arrangement* and the requirement of advance authorization, were not made to section 10804. Accordingly, after a substantial amount of attention in both the Assembly and Senate, these two statutory provisions which originally contained identical language, purposefully were amended to read differently. That is, section 10804 which restricts the ability of *an attorney to receive two compensations for acting in dual capacities* in relation to a single estate, contains express conditions significantly more restrictive than those imposed upon an attorney having a close relationship to the conservator, who seeks only a *single fee* for services rendered in a legal capacity. Under such circumstances, the resulting different language used by the Legislature creates the presumption the Legislature intended a different meaning and effect. (See *Charles S. v. Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422]; see also *People v. Turner* (1993) 15 Cal.App.4th 1690, 1698 [19 Cal.Rptr.2d 736]; *People v. Goodloe, supra,* 37 Cal.App.4th at p. 491.)[5]

Although the trial court here expressed concern with the potential for unfair advantage to a conservatee in cases where there is a business or

---

[5]In a lengthy footnote (maj. opn., *ante,* at p. 123, fn. 5) the majority dismisses *my* concerns and assumes the major changes in section 2645, subdivision (b) were mere technical adjustments by the Senate, inferentially without input from the Assembly which gave birth to

family relationship between a conservator and her attorney, it recognized the Legislature considered that problem, when drafting section 2645 and electing not to require per se disqualification of attorneys who stand in that relationship through the conservator. In its written decision, the court summarized its analysis on a narrow issue, as follows: "What is 'it'? I have concluded that 'it' means 'the relationship between the attorney and the conservator.' This interpretation seems to be consistent with the modification of Probate Code section 10804 (also a part of AB21) wherein rather than using the word 'it', the legislature used the word 'arrangement.' " However, the trial court did not review section 2645, subdivision (b)'s legislative history and the Legislature intentionally removed both the reference to *arrangement* from section 2645, subdivision (b) as well as the requirement of obtaining court approval in advance.

" 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded. [Citations.]' [Citation.]" (*Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 240 [23 Cal.Rptr.2d 281]; *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406]; *Clark* v. *Workers' Comp. Appeals Bd.*, *supra*, 230 Cal.App.3d at p. 696.) Moreover, legislative rejection of specific language in an act as originally introduced is persuasive evidence the act should not be construed to include the omitted language. (*People* v. *Goodloe*, *supra*, 37 Cal.App.4th at p. 491; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].) Consequently, by its actions, the Legislature expressed its intent to state different restrictions in these sections.

We presume the Legislature's action was meaningful and purposeful (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507]), especially where action on both sections 2645, subdivision (b) and 10804 was contained during the same legislative action, on a single bill in which the proposed amendments and their several modifications were presented to the legislators on the same page. Had the legislators not intended to state different requirements, they would have had no need to go through the several revisions of section 2645, subdivision (b); they could have simply left the relevant language unchanged as they did in section 10804. Further, it is not irrational to impose more restrictive conditions on attorneys who attempt to rely on provisions in a decedent's will to obtain dual compensation for serving both as personal representative and as attorney (the scenario which permitted the Gunderson scam) and those situations

---

Assembly Bill No. 21. Not so! The legislative history shows the final enactment was the product of ongoing cooperation and approval of the Assembly drafters and the Senate.

where no dual compensation is being sought for legal services which benefit the estate.

## III

The superior court for the County of San Diego has filed an amicus curiae brief asking us to affirm, on a different ground, arguing that in cases where a spousal relationship exists between the attorney and conservator, there is such a conflict of interest that the contract of employment is void. Amicus curiae suggests, erroneously, the trial court based its decision on alternative grounds: the finding of a conflict of interest and its interpretation of the authorizing statute. However, the trial court specifically rejected that view, concluding there is no per se disqualification even where the family relationship is that of spouse. By the Legislature specifying spouse as one of the family relationships which does not per se disqualify an attorney from receiving compensation for legal services under section 2645, subdivision (b), it showed its intent that requests from spouses should be evaluated on the same basis as those from persons holding other relationships specified.

## IV

Respondent also argues the trial court's interpretation must be correct otherwise the phrase "finds that it is to the advantage, benefit, and best interests" becomes redundant. She argues that finding is implicit in the preceding requirement the court "specifically approves the right to the compensation." Her argument is based on the premise a court could not approve the right to compensation without finding the legal services rendered were to the advantage, benefit, and best interests of the conservatee. However, the existing provisions of section 2640, subdivision (c)(2) relating to requests for attorney fees rendered by an attorney to a conservator do not expressly require such findings. Instead they mandate the court to allow "any compensation requested in the petition the court *determines is reasonable* to the attorney for services rendered." (Italics added.) In light of the legislators' deliberate differentiation between the requirements in section 2645, subdivision (b) and section 10804, and the absence of any existing requirement to make express findings as to the best interests of the conservatee, the requirement in section 2645, subdivision (b) that the court make a specific finding the legal services rendered were for the advantage, benefit and best interests of the conservatee before approving a request for compensation, is not redundant.

Although respondent and amicus curiae argue their input is of little weight, the trial court did consider declarations by the drafters of Assembly

Bill No. 21, Assemblyman Umberg, Assemblyman Morrow and Attorney Bruce S. Ross, submitted by appellant. The declaration of Ross notes he was actively involved in discussions with legislative staff in the drafting of Assembly Bill No. 21[6] and has spoken and lectured extensively on its subject matter since its enactment. He declares directly, what the assemblymen imply, that "[t]he purpose of Probate Code § 2645(b) is to ensure that no spouse of a person who is a guardian or conservator shall receive any compensation for legal services performed for the guardian or conservator unless the Court specifically approves the right to the compensation and find it is to the advantage, benefit, and best interest of the ward or conservatee. . . . [T]he statute is designed to require that all of the facts and circumstances relating to such employment be disclosed to the Court having jurisdiction over the guardianship or conservatorship and to permit the Court to make a finding, based upon all the facts and circumstances, *that such compensation* is to the advantage, benefit and best interest of the ward or conservatee." (Italics added.) Although the declaration of Ross, the principal author of California Practice Guide: Probate (The Rutter Group 1995) may not be considered conclusive, his analysis is clearly consistent with the plain language of the section and the legislative amendments.

We are required to presume, when possible, that every legislative action has a rational purpose. Here, the alteration of the relevant language in section 2645, subdivision (b) must be presumed to express the Legislature's intent to impose different conditions precedent to an attorney's ability to receive compensation under statutes which relate to different attorney/conservator relationships. There is no policy reason compelling a different conclusion.

Appellant's petition for review by the Supreme Court was denied July 31, 1996.

---

[6]His participation and that of the professional probate committee he chaired is noted in the legislative history which states the bill had been "thoroughly negotiated" with representatives of the probate and trust legal committees.